**Lavonne ROBINSON, f/k/a Lavonne Bazemore, individually and as representative of a class, Petitioner**

v.

**COLORADO STATE LOTTERY DIVISION, an agency of the State of Colorado; and Colorado State Lottery Commission, an agency of the State of Colorado. Respondents.**

No. 06SC385.

Supreme Court of Colorado, En Banc.

March 24, 2008.

The Carey Law Firm, Robert B. Carey, Leif Garrison, Colorado Springs, Colorado, Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Andrew M. Katarikawe, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

Petitioner Lavonne Robinson appeals a judgment in favor of defendants, the Colorado State Lottery Division and the Colorado State Lottery Commission (collectively "the Lottery"). Robinson contends that the Lottery continues to sell scratch tickets for months after all the represented and advertised prizes have already been awarded. She frames her complaint in contract and quasi-contract, arguing that she bought scratch tickets with the belief, based on the Lottery's representations, that she had a chance to win certain represented prizes and that she did not receive the chance to win for which she had contracted.

The trial court granted the Lottery's C.R.C.P. 12(b)(1) motion to dismiss, holding that Robinson's claims were barred by the Colorado Governmental Immunity Act ("the CGIA"), sections 24–10–101 to –120, C.R.S. (2007), because the claims lie in tort or could lie in tort. Additionally, the trial court awarded attorney fees to the Lottery pursuant to section 13–17–201, C.R.S. (2007), which allows for attorney fees against a plaintiff whose tort action was dismissed under C.R.C.P. 12(b). On appeal, the court of appeals affirmed the dismissal of all claims against the Lottery pursuant to the CGIA and also affirmed the award of attorney fees. *Robinson v. Colo. State Lottery Div.*, 155 P.3d 409, 413 (Colo.App.2006). We granted certiorari to review whether Robinson's claims lie in tort or could lie in tort and are therefore barred by the CGIA. Additionally, we review whether the court of appeals erred in holding that the Lottery was entitled to an award of attorney fees under section 13–17–201.

Because the underlying injury asserted in Robinson's claims arises out of the alleged misrepresentation of certain facts by the Lottery, we find that Robinson's claims lie in tort or could lie in tort for the purposes of governmental immunity. Thus, they are barred by the CGIA. We further find that the grant of attorney fees to the Lottery

pursuant to section 13–17–201 was error because the statute does not apply to the dismissal of contract claims. Accordingly, we affirm the judgment of the court of appeals in part and reverse in part.

## I. Facts and Procedural History

Robinson brought suit against the Lottery and Texaco, Inc. in 2000. The Colorado State Lottery Division, a part of the Colorado Department of Revenue, is authorized to operate and supervise a statewide lottery. § 24–35–203, C.R.S. (2007). The Division includes the Lottery Commission, which is responsible for promulgating rules and regulations governing the operation of the lottery. Texaco, Inc. is a corporation which has been granted a license by the Lottery Division to sell the Lottery's instant scratch game tickets to the general public.[1]

In her complaint, Robinson alleges that the Lottery sells instant scratch game tickets for a significant period of time after all the represented or advertised prizes[2] are awarded or claimed. Thus, the Lottery is selling instant scratch tickets when the players have no chance of winning the grand prize. Robinson also alleges that the Lottery is aware that the represented and advertised prizes are not available when these tickets are being sold and that the Lottery condones or encourages such sales. Robinson states that by ignoring the fact that it is selling scratch tickets that cannot win the prize used to induce purchase, the Lottery brings in millions of dollars per year in revenue from tickets that would not have been purchased if the players had been aware that the represented and advertised prizes were no longer available. Robinson contends that because of such "wrongful conduct," the Lottery receives money from instant scratch players hundreds of times per day without providing those players with the chance to win that they were promised and for which they contracted.

For example, Robinson alleges that she purchased "Luck of the Zodiac" scratch game lottery tickets on July 24, 1998, and that the ticket was emblazoned with the words "win up to $10,000." However, the Lottery had already awarded the last $10,000 grand prize seventy-two days earlier. Robinson further states in her complaint that for the last five years she has purchased various instant scratch game tickets on a regular basis and that she played with the expectation that she could win the advertised and represented prizes. Robinson brings this suit as a representative of a class consisting of all persons who purchased instant scratch game tickets from the Lottery when all the represented or advertised prizes had already been claimed or awarded. However, the class has not been certified.

Specifically, Robinson filed seven claims against the Lottery and Texaco: (1) breach of express contract; (2) breach of express warranty under the Colorado Uniform Commercial Code ("UCC"); (3) breach of implied warranty under the UCC; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of section 24–35–206, C.R.S. (2007); (6) violation of the Colorado Consumer Protection Act ("the CCPA"); and (7) restitution and unjust enrichment.[3]

Robinson's complaint was initially dismissed by the trial court for failure to exhaust administrative remedies. Robinson appealed, and the court of appeals reversed the dismissal and remanded the case to the trial court to determine whether Robinson's claims were barred by the CGIA. On remand, the trial court granted the Lottery's C.R.C.P. 12(b)(1) motion to dismiss, holding that Robinson's claims lie in tort and are therefore barred by the CGIA. After the Lottery moved for attorney fees pursuant to section 13–17–201, the trial court held that the Lottery was entitled to $52,514 in attorney fees.

---

1. This appeal does not pertain to Robinson's claims against Texaco.

2. Generally, the "represented and advertised prizes" consist solely of the grand prize that is advertised on the face of the scratch ticket.

3. In the briefs that Robinson submitted to this court, she states that she abandoned the Fifth and Sixth claims as they pertained to the Lottery's alleged violations of section 24–35–206 and the CCPA. Thus, we will not address whether these statutory claims are barred by the CGIA.

On appeal, the court of appeals affirmed the dismissal of all claims against the Lottery and affirmed the award of attorney fees. The court held that Robinson's claims sounded in tort for purposes of the CGIA. The court of appeals reasoned that any claim that alleges negligent misrepresentation is based in tort and would be subject to the CGIA. Looking to the underlying factual basis for Robinson's claims, the court of appeals determined that the essence of Robinson's claims was that the Lottery negligently misrepresented to her the possibility that she could win one of the represented or advertised prizes and that the Lottery thereby fraudulently induced her into purchasing scratch game tickets. Thus, the court of appeals concluded that Robinson's claims lie in tort or could lie in tort and were barred by the CGIA.

Robinson now petitions this court for certiorari on two issues. First, Robinson contends that the court of appeals erred in holding that her claims against the Lottery, although pleaded in contract and equity, "sound in tort" and are therefore barred by the CGIA. Second, Robinson argues that the court of appeals erred in holding that the Lottery was entitled to an award of attorney fees under section 13–17–201.[4]

## II. The Colorado Governmental Immunity Act

■ We review the issue of whether Robinson's claims are barred by the CGIA de novo because it concerns a matter of statutory construction. *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1171 (Colo.2000). Thus, we are not bound by the lower court's determination. *Id.*

■ Pursuant to the CGIA, public entities are immune from liability in all claims for injury that lie in tort or could lie in tort, unless the claim falls within an exception to that immunity. Section 24–10–106(1), C.R.S.

(2007), provides: "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." In contrast, the CGIA was not intended to apply to actions grounded in contract. *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258 (Colo.1996).

■ Because Robinson's claims here are framed in the pleadings as contractual and quasi-contractual, rather than tort claims, the issue before us is whether these claims "lie in tort or could lie in tort" and are thus barred by the CGIA. As we have made clear, the form of the complaint is not determinative of the claim's basis in tort or contract. *Id.; City & County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 764 (Colo.1992). Instead, a court must consider the nature of the injury and the relief sought. *See Conners*, 993 P.2d at 1175–76; *Adams v. City of Westminster*, 140 P.3d 8, 11 (Colo.App.2005); *CAMAS Colo., Inc. v. Bd. of County Comm'rs*, 36 P.3d 135, 138 (Colo.App.2001). When the injury arises either out of conduct that is tortious in nature or out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury, the claim likely lies in tort or could lie in tort for purposes of the CGIA. *See Conners*, 993 P.2d at 1176; *Adams*, 140 P.3d at 10 (holding that the CGIA was intended to apply when the claimant seeks redress from injuries that result from tortious conduct); *CAMAS Colo.*, 36 P.3d at 138 (noting that a court must examine the source from which the allegedly breached duty arises). Although the nature of the relief requested is not dispositive on the question of whether a claim lies in tort, the relief requested informs our understanding of the nature of the injury and the duty allegedly breached. *See generally Conners*, 993 P.2d at 1170–76 (holding that although the form of

---

4. We granted certiorari on the following issues:
 1. Whether the court of appeals erred in holding that petitioner's claims against the state lottery, although pleaded in contract and equity, "sound in tort" and are therefore barred by the Colorado Governmental Immunity Act.

2. Whether the court of appeals erred in holding that the state lottery was entitled to an award of attorney fees under section 13–17–201.

relief alone does not govern the categorization of a claim as a tort or other type of action, a trial court must consider the nature of the relief sought to determine whether a particular claim lies in tort or could lie in tort). We assess the nature of the injury and the relief requested on a case-by-case basis through a close examination of the pleadings and undisputed evidence. *See Berg,* 919 P.2d at 259.

 Not surprisingly, where the nature of the injury and the relief requested implicate both tort and contract, the analysis becomes more complicated. Indeed, certain common law tort claims that are expressly intended to remedy economic loss such as fraud or negligent misrepresentation can exist independent of or in conjunction with a contractual claim. *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1263 (Colo.2000). Yet, these economic-loss claims sound in tort. *Id.* For example, a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for a tort claim asserted by a party detrimentally relying on such negligent misrepresentations. *Keller v. Smith Harvestore Prods.,* 819 P.2d 69, 72 (Colo. 1991). Thus, the plaintiff who has been fraudulently induced to enter into the contract may either sue to rescind the contract or affirm the contract and sue in tort for the damages caused by the fraudulent act. *W. Cities Broad., Inc. v. Schueller,* 849 P.2d 44, 48 (Colo.1993). In these areas where there is such overlap, claims that could arise in both tort and contract are barred by the CGIA, while claims arising solely in contract are not subject to the CGIA.

We have had several opportunities to consider whether a particular claim lies solely in contract or whether it could also lie in tort and would thus be barred by the CGIA. In *Berg,* we addressed the question of whether the plaintiff's particular claim of promissory estoppel was actually based on a theory of equitable estoppel, which is fundamentally a tort theory because it is based on the misrep-

resentation of facts. 919 P.2d at 259. There, a former employee of Colorado State University alleged that the University promised to provide health care coverage at a level at least equal to that which the employee had received at the time of his retirement and that it failed to provide such coverage. *Id.* Because the essence of the claim was the breach of a promise that was detrimentally relied upon rather than alleged misrepresentations of certain facts, we held that the claim was not actually a tort claim for the purposes of the CGIA. *Id.*

 Our reasoning in *Berg* was based on a similar case, *Board of County Commissioners v. DeLozier,* in which this court distinguished promissory estoppel claims from the theory of equitable estoppel. 917 P.2d 714, 716–17 (Colo.1996). There, DeLozier alleged that a County Commissioner had promised her that the next open paramedic position with the ambulance service would be offered to her, but the Board later failed to offer her the position even though DeLozier had left her previous employment and moved to Summit County. *Id.* at 715. Because DeLozier's claim was not based on any misrepresentations of fact and could not support a claim for fraud or misrepresentation, we held that her claim was properly characterized as one of promissory estoppel rather than equitable estoppel. *Id.* at 717. We stated:

> In an equitable estoppel claim for negligent misrepresentation of facts, the misrepresentation must be of material fact that presently exists or has existed in the past. A promise relating to future events without a present intent not to fulfill the promise is not actionable as a tortious misrepresentation of facts. Thus, a claim of equitable estoppel lies in tort, whereas a claim of promissory estoppel lies in contract.

*Id.* at 716 (citations omitted).[5] Thus, DeLozier's claim was contractual and was not barred by the CGIA. *Id.*

**5.** We noted recently in *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.,* that equitable estoppel is not actually a cause of action as *DeLozier* and *Berg* appear to

suggest. 176 P.3d 737, 741 (Colo.2007). Rather, equitable estoppel "is more precisely characterized as an equitable doctrine that suggests a tort-related theory in that it attempts to allocate

As *Berg* and *DeLozier* illustrate, a claim that is supported by allegations of misrepresentation or fraud is likely a claim that could lie in tort. *See Berg,* 919 P.2d at 259; *DeLozier,* 917 P.2d at 716–17; *see also Patzer v. City of Loveland,* 80 P.3d 908, 912 (Colo.App.2003) (explaining that a claim that is based not on a promised performance in the future, but rather on an alleged misrepresentation of facts is fundamentally a tort claim barred by the CGIA); *Lehman v. City of Louisville,* 857 P.2d 455, 457 (Colo.App. 1992) (holding that when the essence of the claim is either negligent or intentional misrepresentation, the claim could lie in tort). In sum, these cases apply our general rule that courts must assess the nature of the injury underlying the claim to determine whether the injury arose out of tortious conduct or the breach of a duty arising in tort and thus whether the claim could lie in tort.

## A. Contractual Claims

We turn first to Robinson's contractual claims for relief: (1) breach of express contract; (2) breach of UCC express warranties; (3) breach of UCC implied warranties; and (4) breach of implied covenant of good faith and fair dealing.

Underlying these claims are the following factual allegations regarding the Lottery's conduct. The Lottery sells instant scratch game tickets for a significant time period after all represented and advertised prizes are awarded when players have no chance of winning the prizes. The Lottery is aware that these scratch tickets do not have the represented prize available and that an instant scratch ticket without a grand prize would not sell. In fact, the Lottery continues to encourage the purchase and sale of scratch tickets that have no more represented prizes available. By ignoring the fact that it is selling scratch tickets that cannot win the prize used to induce purchase, the Lottery brings in millions of dollars per year in revenue from tickets purchased when the scratch player has no chance of winning the prize that he or she sought to win. For example, tickets that Robinson purchased were emblazoned with the words "win up to $10,000" even though the last $10,000 prize had already been awarded. Robinson paid $1 to $2 per scratch ticket and would not have done so if she had been aware that the represented and advertised prizes were no longer available at the time of purchase.

Robinson contends that her underlying injury arises out of the Lottery's failure to deliver what it offered, namely a chance to win one of the represented and advertised prizes. Specifically, Robinson submits that she is *not* arguing that the Lottery wrongfully induced her to enter into an unfavorable contract.

However, the CGIA is less concerned with what the plaintiff is arguing and more concerned with what the plaintiff could argue. *See Berg,* 919 P.2d at 258. As we stated previously, the form of the complaint is not determinative of whether the claim lies in tort or could lie in tort. *Id.* Here, a review of the factual allegations supporting Robinson's claims for relief reveals that the underlying injury is based on the Lottery's alleged misrepresentations. Specifically, the injury arises out of the Lottery's misrepresentations regarding the availability of the represented prizes, which induced the purchase of scratch tickets. Thus, unlike *Berg* and *DeLozier,* where the court determined that the plaintiff's allegations could not support a claim for fraud or misrepresentation, Robinson's allegations in the complaint would appear to support a tort claim. Consequently, regardless of whether the Lottery breached any contractual duties, the essence of the injury here is tortious in nature and would support a claim for the breach of a duty arising in tort.

Furthermore, in this instance, the nature of the relief requested does not deter our conclusion that Robinson's contractual claims could lie in tort. Although Robinson is vague about the specific damages she is requesting in conjunction with her contractual claims,

loss resulting from the misrepresentation of facts to the most culpable party and to ameliorate an innocent party's losses." *Id.* Regardless of this distinction, the delineation between promissory estoppel and equitable estoppel is helpful for the purpose of assessing whether a claim lies or could lie in tort.

Robinson does state that the Lottery's conduct has resulted in damages "including but not limited to the money expended on lottery tickets." In her prayer for relief, Robinson requests "actual damages" and "appropriate damages, including restitution of the revenues received either after a represented prize was no longer available or when it was unwinnable." Robinson contends, based on our opinion in *Conners*, that her contractual claims do not lie in tort because they are equitable in nature and are not claims for "compensatory relief for personal injuries." *See* 993 P.2d at 1176. However, contrary to Robinson's suggestion, *Conners* does not stand for the proposition that the CGIA will never bar claims for equitable relief because they are not claims for compensatory relief.

In *Conners*, we addressed the question of whether a former city employee's claim for backpay and reinstatement under Colorado's Civil Rights Act ("the CRA"), a civil rights statute designed to redress workplace discrimination, was a claim that lies in tort or could lie in tort. *See id.* at 1176–77. In that case, we were presented with a statutory claim, without origins in common law, which was intended by the legislature to address constitutionally based concerns of equality rather than mere compensation for personal injuries. *See id.* at 1173–75. On the clean slate of a statutorily imposed duty, we analyzed the CRA's "conception of injury and remedy" in order to *inform* our understanding of the nature of the underlying claim. *See id.* at 1176–77. Regarding the nature of the relief requested, we stated that the "form of relief alone, whether damages or equitable relief, does not govern the categorization of a claim as a tort or other type of action." *Id.* at 1176. However, we noted that courts must consider the nature of the relief, particularly in cases such as *Conners* where the statutory claim was not based on an action with common law roots in tort or contract. *See id.* Thus, by looking at the nature of the relief requested in order to inform our un-

derstanding of the underlying duty that the statute imposes, we determined that CRA claims are not tortious in nature because they are non-compensatory, equitable claims, which are intended to redress general discriminatory employment practices rather than compensate the plaintiff for tort-like personal injuries. *See id.* at 1176–77. Accordingly, we held that the CRA claims did not lie in tort for the purposes of the CGIA. *Id.* at 1177.

In sum, contrary to Robinson's contention, the nature of the relief is not dispositive as to the question of whether a claim lies in tort. Rather, the relief requested is merely an aid in understanding the duty breached or the injury caused to determine if the claim lies or could lie in tort.

Here, we need not determine whether a statutorily created claim lies in tort. Instead, we have determined above that regardless of whether Robinson has presented valid contract claims, the pleaded allegations underlying the contract claims could be alternatively pleaded in tort—in other words, the claims could lie in tort. The complaint and the pleadings in this case clearly reveal an injury that is tortious in nature. Consequently, analysis of the relief requested plays a less significant role in informing our understanding of the underlying injury. Thus, irrespective of the label attached to the damages requested, Robinson cannot elude the conclusion that the underlying injury and the duty breached are tortious in nature and therefore her claims could lie in tort.[6] Accordingly, Robinson's contract claims are barred by the CGIA.

## B. Unjust Enrichment Claim

Robinson's seventh claim for restitution and unjust enrichment alleges the following. Robinson conferred a benefit on the Lottery in the form of monies paid for scratch tickets. Robinson would not have

---

6. Although the prayer for relief in Robinson's complaint also included a request for injunctive relief, Robinson did not present a separate or distinct claim for injunctive relief. It is therefore unclear as to which specific claims this request for injunctive relief pertains. Nor did Robinson argue in the courts below or in the briefs to this court that a claim for injunctive relief was separable from the contract claims that we have determined to be barred by the CGIA. Thus, we do not consider today whether a non-compensatory claim for declaratory or injunctive relief would be barred by the CGIA.

purchased the tickets had she known that the represented and advertised prizes were unavailable, unwinnable, or previously claimed. The Lottery's retention of Robinson's money unjustly enriches the Lottery. According to Robinson, the Lottery is aware that "the reality of the scratch games is that they are simply a regressive tax on lower-income, undereducated and minority citizens."[7] Robinson argues that because this claim seeks equitable relief that is non-compensatory in nature, it does not lie in tort for purposes of the CGIA.

 It is a matter of first impression for this court as to whether a claim for unjust enrichment is a claim that lies or could lie in tort for the purposes of the CGIA. Unjust enrichment is a form of quasi-contract or contract implied in law that does not depend in any way upon a promise or privity between the parties. *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998). The test for recovery under an unjust enrichment theory requires a showing that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. *Id.* at 119–20. The scope of the remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another. *Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 795 (Colo.1991); *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 (Colo.1982).[8]

In other jurisdictions, courts have held that a claim based on unjust enrichment can be predicated on either tort or contract law. *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 737 F.Supp. 1272, 1284–85 (W.D.N.Y.1990) (applying New York law and finding that an unjust enrichment claim predicated on defendants' intentional or negligent acts sounded in tort); *State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (holding that the doctrine of unjust enrichment can arise from contracts, torts, or other predicate wrongs); *Peddinghaus v. Peddinghaus*, 295 Ill.App.3d 943, 230 Ill.Dec. 55, 692 N.E.2d 1221, 1225 (1998) (holding that unjust enrichment claim alleging fraudulent inducement was based on tort theory); *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 793 P.2d 855, 860–62 (1990) (finding that unjust enrichment was an action "based on contract" for the purposes of New Mexico's governmental immunity statute). To determine if an unjust enrichment claim sounds in tort or contract, some jurisdictions look to the factual basis underlying the claim. *See, e.g., Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 832 (S.D.N.Y.1986) (holding that plaintiff's unjust enrichment claim was predicated on tort and that it was therefore subject to the statute of limitations for tort actions); *Peddinghaus*, 230 Ill.Dec. 55, 692 N.E.2d at 1225.

Because an unjust enrichment claim can be predicated on either tort or contract, we apply the same case-by-case analysis to an unjust enrichment claim as we have done with other claims, assessing the nature of the injury and the relief requested. *See Berg*, 919 P.2d at 259; *DeLozier*, 917 P.2d at 715. Here, Robinson's unjust enrichment claim requires a showing that it would be unjust for the Lottery to retain the money spent by Robinson on scratch tickets when the represented prizes were no longer available. However, to show injustice, Robinson necessarily relies on allegations that she was in-

---

7. Robinson's seventh claim also incorporates all of the complaint's preceding paragraphs, which include the factual allegations outlined above in the discussion of Robinson's contractual claims.

8. A well respected commentator describes the possible overlap between tort claims and unjust enrichment claims as follows:

[T]here has developed the doctrine that where the commission of a tort results in the unjust enrichment of the defendant at the plaintiff's expense, the plaintiff may disregard, or "waive" the tort action, and sue instead on a theoretical and fictitious contract of restitution of the benefits which the defendant has so received. "Waiver" of the tort is an unfortunate term, since the quasi-contract action itself is still based on the tort, and there is merely an election between alternative, co-existing remedies

. . .

*Prosser and Keeton on the Law of Torts* 672–73 (5th ed.1984).

duced into the purchase of scratch tickets by the Lottery's alleged misrepresentations that certain prizes remained available. Once again, we are presented with an injury which appears to be based on tortious conduct or the breach of a duty actionable in tort. Thus, because this unjust enrichment claim is predicated on tortious conduct and the nature of the injury arises out of a misrepresentation, this claim lies in tort or could lie in tort for the purposes of the CGIA.

Furthermore, the mere fact that Robinson is requesting equitable relief in the form of rescission does not deter our conclusion that this particular unjust enrichment claim for equitable relief lies in tort. Although the relief requested informs our understanding of whether the injury is tortious in nature, it is not dispositive of the claim's underlying basis in tort or contract. Robinson seeks restitution of the Lottery's profits on scratch tickets sold after the represented prizes were no longer available. Although this relief is labeled restitution, it is in effect the equivalent of damages that Robinson could plead in tort—money expended on lottery tickets when the Lottery misrepresented certain facts in order to induce Robinson to purchase the tickets. Thus, in this particular instance, where the nature of the injury underlying the unjust enrichment claim arguably arises out of tortious conduct and the request for relief is effectively equivalent to the damages that Robinson could seek in tort, the claim lies in tort or could lie in tort. Accordingly, Robinson's unjust enrichment claim is barred by the CGIA.

### III. Attorney Fees

Robinson contends that the court of appeals incorrectly affirmed the award of attorney fees to the Lottery pursuant to section 13–17–201. Section 13–17–201 provides that a defendant may recover attorney fees when a tort action is dismissed prior to trial in response to the defendant's C.R.C.P. 12(b) motion. Specifically, Robinson contends that because she framed her action in contract and it was the contract claims that were dismissed, section 13–17–201 does not warrant the grant of attorney fees to the Lottery. She relies on two court of appeals'

cases that have adopted an interpretation of section 13–17–201 that supports her argument. *See Kennedy v. King Soopers Inc.,* 148 P.3d 385, 388 (Colo.App.2006) (noting that for the purpose of section 13–17–201, courts must rely on plaintiff's characterization of the claims in the complaint and should not consider what should or might have been pleaded); *Sweeney v. United Artists Theater Circuit, Inc.,* 119 P.3d 538, 541 (Colo.App. 2005), *cert. denied,* 2005 WL 2181649 (Colo. Sept.12, 2005) (holding that even though plaintiff's claim was barred by the CGIA because it sounded in tort, attorney fees were not appropriate where it was a contract claim that was pleaded and thus a contract claim that was dismissed).

We have not yet considered this issue and consequently we granted certiorari to decide the question of whether the trial court properly assessed attorney fees against Robinson even though section 13–17–201 applies to tort actions and her claims were pleaded in contract and quasi-contract. In reviewing the statute, we agree with Robinson that section 13–17–201 does not apply to claims that are pleaded in contract, but are dismissed pursuant to the CGIA because they lie or could lie in tort.

### A.

As a preliminary matter, we address the Lottery's contention, raised in the briefs, that we may not decide this question because Robinson did not present the argument in the courts below. After a thorough review of the record, we conclude that it is appropriate to review the question of attorney fees.

We have often said that issues not raised in or decided by a lower court will not be addressed for the first time on appeal. *See Moody v. People,* 159 P.3d 611, 614 (Colo. 2007); *People v. Salazar,* 964 P.2d 502, 507 (Colo.1998). However, appellate courts also have the discretion to notice any error appearing of record, whether or not a party preserved its right to raise or discuss the error on appeal. *See* C.A.R. 1(d); *Roberts v. Am. Family Mut. Ins.,* 144 P.3d 546, 550 (Colo.2006); *Mt. Emmons Min. Co. v. Town*

*of Crested Butte,* 690 P.2d 231, 238 (Colo. 1984).

In *Roberts,* we exercised our discretion to review an issue that the parties did not raise in the trial court. 144 P.3d at 550–51. There, the plaintiffs consistently opposed the defendant's motion for summary judgment, but failed to identify and challenge an implicit finding in the trial court's order that incorrectly construed the insurance policy provisions at issue. *Id.* We reasoned that where "a misreading of the controlling law leads a trial court to grant summary judgment in the face of undisputed facts to the contrary, a reviewing court cannot be constrained by the failure of a party to specifically identify the misreading and bring it to the trial court's attention." *Id.* at 551. Thus, because the trial court's incorrect construction of the contract directly affected the validity of the judgment and was a question of law that could be considered on appeal without giving deference to the lower courts, we found that it was appropriate for review. *Id.* at 550–51.

Reviewing the record on the case before us, we find that Robinson objected to the imposition of attorney fees in the trial court and in the court of appeals. However, she failed to challenge the trial court's implicit holding that section 13–17–201 is, as a threshold matter, applicable to contract claims that are dismissed prior to trial because they lie or could lie in tort and are barred by the CGIA.

After Robinson filed her opening brief with the court of appeals, the court in *Sweeney* held that section 13–17–201 does not apply where contract claims are dismissed pursuant to the CGIA. 119 P.3d at 541. In its response brief to the court of appeals, the Lottery noted that *Sweeney* had been decided, but argued that the case was distinguishable. In her reply brief, Robinson argued that as in *Sweeney,* the court of appeals could not uphold the award of attorney fees for the Lottery where her action was framed as one in contract. The court of appeals did not address the underlying question of whether Robinson's contract claims were subject to the attorney fee provision of section 13–17–201; rather, the court focused on whether the record supported the reasonableness of the attorney fees granted by the trial court. However, implicit in the court of appeals' holding was an underlying construction of section 13–17–201, which would allow attorney fees to be imposed based on the dismissal of claims that were pleaded in contract or in quasi-contract.

In light of these circumstances, we exercise our discretion to review and correct the error underlying the trial court's and the court of appeals' judgments, which granted and upheld the award of attorney fees to the Lottery. First, the interpretation of section 13–17–201 is a matter of statutory construction, for which our review is de novo. Second, both the trial court and the court of appeals had the opportunity to hold as a matter of law that section 13–17–201 was not applicable to Robinson's claims; however, by failing to address the issue directly, both courts implicitly held that the statute applies to Robinson's claims. Third, Robinson has consistently opposed the imposition of attorney fees and has never acquiesced to a finding that attorney fees were appropriately assessed. Finally, because both parties have briefed the issue extensively in this court and presented their contentions at oral argument, neither side is prejudiced by our consideration of the question. Thus, we conclude that the issue is appropriate for review.

## B.

Section 13–17–201 provides for a reasonable award of attorney fees "[i]n all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under [C.R.C.P.] 12(b)." Thus, an award of attorney fees is appropriate when the trial court dismisses an entire tort action pursuant to C.R.C.P. 12(b). *See State v. Golden's Concrete Co.,* 962 P.2d 919, 925 (Colo.1998).

The court of appeals has interpreted this statute on several occasions. In *Sweeney,* the plaintiff contended that his claim was expressly founded upon an alleged breach of contract, and therefore that section 13–17–201 did not apply to the dismissal of his

contract action. 119 P.3d at 541. The court of appeals agreed, stating:

> [P]laintiff explicitly labeled his claim as a contract claim ... We have concluded that plaintiff's action should properly have been founded in tort under § 13–21–115. Plaintiff's claim was, nevertheless, framed as a contract claim, and it was the purported contract claim that was dismissed.

*Id.* Thus, the court of appeals concluded that section 13–17–201 was not applicable to the plaintiff's claim that was pleaded in contract, in spite of the court's conclusion that the claim was founded in tort and barred by the CGIA. *Id.*

The court of appeals followed the holding of *Sweeney* in *Kennedy,* where the plaintiff's complaint presented a tort claim but the trial court determined that the plaintiff's claim was grounded on the federal laws governing collective bargaining agreements rather than on tort law. 148 P.3d at 388. The court of appeals held that because the plaintiff's claim was pleaded as a tort, the dismissal of the plaintiff's case triggered the mandatory award under section 13–17–201. *Id.* Citing *Sweeney,* the court of appeals reasoned that for the purposes of applying section 13–17–201, courts should rely on the plaintiff's characterization of the claims in the complaint and should not consider what should or might have been pleaded. *Id.*

Here, Robinson intentionally and purposely filed a contract action, alleging both contractual and quasi-contractual claims against the Lottery. Based on our holding today, it is the contract claims that are barred by the CGIA and the contract claims that are dismissed. Although section 13–17–201 was enacted to discourage the unnecessary litigation of tort claims, *see Smith v. Town of Snowmass Village,* 919 P.2d 868, 872 (Colo.App.1996), it was not intended to hinder the filing of contract claims where the plaintiff could have alternatively pleaded claims in tort. Thus, we will not read the CGIA's concern for claims that "lie or could lie in tort" into the plain language of section 13–17–201. In interpreting statutory language, we presume that the legislature did not use language idly. *Carlson v. Ferris,* 85 P.3d 504, 509 (Colo.2003). Rather, the use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings. *Id.* Although the General Assembly could have enacted a statute allowing for an award of attorney fees in the dismissal of actions that lie in tort or could lie in tort, it did not choose to do so.

Accordingly, we find that section 13–17–201 does not apply to the dismissal of Robinson's claims, where her action was pleaded in contract and it was the contract claims that were dismissed.

## IV. Conclusion

Although a plaintiff may legitimately proceed against an entity covered by the CGIA with claims that arise out of the breach of contractual duty, she may not do so when her alleged injury and relief requested could alternatively be pleaded and remedied through a tort claim. Here, we conclude that Robinson's claims lie or could lie in tort and are thus barred by the CGIA. Further, we find that the award of attorney fees to the Lottery was based on an incorrect interpretation of section 13–17–201. Because the statute does not apply to the dismissal of contract actions, we hold that the court of appeals erred in awarding attorney fees to the Lottery. Accordingly, we affirm in part and reverse in part the judgment of the court of appeals.