25CA0992 Frydendall v Colorado Springs 05-28-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0992
El Paso County District Court No. 24CV32207
Honorable William Bain, Judge

Patrick Frydendall and Laurie Frydendall,

Plaintiffs-Appellants and Cross-Appellees,

v.

City of Colorado Springs, a Home Rule City and Colorado Springs Utilities, a
wholly owned enterprise of the City of Colorado Springs,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

J. Gregory Walta, Colorado Springs, Colorado, for Plaintiffs-Appellants and
Cross-Appellees

Marc Smith, Acting City Attorney, Brian Stewart, Senior City Attorney,
Colorado Springs, Colorado, for Defendants-Appellees and Cross-Appellants

¶ 1     Plaintiffs, Laurie and Patrick Frydendall, appeal the district court's judgment dismissing their amended complaint against defendants, the City of Colorado Springs and Colorado Springs Utilities (collectively, the City).  In response, the City cross-appeals that portion of the court's judgment denying its motion to dismiss for lack of subject matter jurisdiction.  We affirm.

I.     Background

¶ 2     The Frydendalls have lived in Colorado Springs at the same address for twenty-five years.  Historically, the Frydendalls' home was serviced by the City's water main located in the alley behind their home.  The water main was connected to the Frydendalls' water meter using a fifteen-foot, 0.75-inch service line (the old system).  In 2024, the City announced plans to upgrade the old system by replacing the old water main with a new water main that would run under the street in front of the Frydendalls' home.  The new water main would connect to the Frydendalls' home via a new, 180-foot service line (the new system).

¶ 3     Beginning in May 2024, the Frydendalls had several meetings with officials from the City to share their objections to the new system.  Primarily, the Frydendalls argued that the volume of water

delivered to their home would be substantially reduced under the new system due to the much longer service line that had to make a sharp turn to reach the Frydendalls' home. The City stated that the volume of water delivered to the Frydendalls' home would not decrease under the new system, but the Frydendalls maintained their objection. The Frydendalls alleged that the City informed them that if they refused to withdraw their objection to the new system, the City would not connect their home to the new main, leaving them with no water service when the old water main was taken out of service.

¶ 4 The Frydendalls later learned that the City was planning to use a one-and-a-half-inch service line to connect their home to the new system. In August, the Frydendalls expressed their concerns about the size of the new line to the City. The Frydendalls alleged that, in response to these concerns, the City's project manager agreed to use a two-inch service line instead of the one-and-a-half-inch line originally planned. The Frydendalls alleged that, in exchange for the City's promise to use a two-inch line and to deliver equal water volume to their home, the

Frydendalls withdrew their objection and agreed to the City's alteration of the water delivery system.

¶ 5 After the City completed its work, the Frydendalls alleged that they "immediately" noticed "a drastic drop in the water volume" at their home. They also discovered that, counter to its promise, the City had installed a one-and-a-half-inch service line connecting their home to the water main. In response to the Frydendalls' concerns, employees from the City conducted several tests to assess the volume of water delivered to the Frydendalls' home under both the old and new systems.

¶ 6 Because the old system remained charged and connected to the Frydendalls' home, the City had to manipulate conditions within the old water main to conduct a test of the water volume produced by the old system. The Frydendalls alleged that during the test of the new system, a City engineer "took a video of the water volume inside [the Frydendalls'] shower while flushing the toilet" and recorded a drop in water pressure. According to the Frydendalls, the City engineer "verbally confirmed the video showed that the water volume in the house under the new system was 'insufficient.'" Mr. Frydendall took a photo of the engineer's

handwritten report, which indicated that a video had been taken of the engineer's test at their home. The Frydendalls alleged that the City engineer confirmed that the City would "take steps to correct the problem," but the City took no further action to address the Frydendalls' concerns.

¶ 7 In November, the Frydendalls filed a complaint against the City, asserting a claim for breach of contract and a claim for "bad faith breach of contract and claim handling." The City moved to dismiss, arguing primarily that it was immune from liability under the Colorado Governmental Immunity Act (CGIA) and, alternatively, that the Frydendalls failed to state a claim upon which relief could be granted. The district court determined that the CGIA did not preclude the Frydendalls' claims because they alleged injuries arising from the City's maintenance and operation of a public water facility and the CGIA excludes that class of claims from its scope. But it found that the allegations in the Frydendalls' complaint were conclusory and ordered them to file an amended complaint.

¶ 8 The Frydendalls filed an amended complaint, asserting a claim for "intentional breach of contract" and a claim for "bad faith breach of contract and bad faith claim handling," which included more

specific allegations. Specifically, the Frydendalls alleged that the City entered into a contract with the Frydendalls to (1) "maintain the same level of water volume and pressure in the [Frydendalls'] home"; (2) "cause no negative impact on the level of water volume and pressure in the [Frydendalls'] home"; and (3) "use [two]-inch piping for the new [service] line." The Frydendalls alleged that, in exchange for the City's promise, they "agreed to [the City's] plan to deliver water to their home through" the new system. Finally, they alleged that the City "intentionally and surreptitiously breached [its] contract and [its] duty of good faith and fair dealing by using [one-and-a-half-inch] piping instead of the agreed upon [two]-inch piping which, combined with the 180-foot water line, resulted in a drastic reduction of water volume in [the Frydendalls'] home."

¶ 9    The City again moved to dismiss the Frydendalls' complaint, reasserting its arguments that it was immune from liability under the CGIA and that the Frydendalls' complaint failed to state a claim upon which relief could be granted. Concerning the breach of contract claim specifically, the City argued that the Frydendalls' amended complaint failed to "describe the terms of any agreement with enough specificity to plausibly show that a contract existed";

"allege facts that show the parties agreed to, or even discussed, a specific volume of water or other terms necessary to create a binding contract"; or "allege that either party made a specific offer to the other that was supported by consideration and accepted prior to the new water system's installation." The City acknowledged that the Frydendalls had alleged "that [the City] agreed to install a larger service line, presumably to address their concerns," but it argued that they failed to "allege that there was any discussion of or bargaining for consideration to support the alleged agreement."

¶ 10    First, addressing the City's CGIA arguments, the court adopted its prior ruling and again determined that the City was not immune. Turning to the merits of the claims, the court explained that proof of a binding contract requires the pleading party to show that the agreement was supported by some kind of consideration. The court acknowledged the Frydendalls' argument that the withdrawal of their objection to the City's installation of the new system amounted to adequate consideration but nevertheless concluded that, "whatever the alleged promises the City made to the [Frydendalls] were, those promises were not exchanged for any valuable consideration from [the Frydendalls]." The court explained

6

that the City was "going to replace the old main in the alley with the new one in the street, regardless of whether [the Frydendalls] agreed with the plan or not," and that "[i]t cannot plausibly be alleged that had the [Frydendalls] maintained their objection to the City's proposal, the project would have stopped." Accordingly, the court dismissed the amended complaint.

¶ 11     The Frydendalls filed a "Motion to Reverse," arguing that the court had overlooked established law that the consideration for an enforceable contract can be as little as a "peppercorn." The district court denied the motion, concluding that the Frydendalls did not cite "any legal authority to support their argument that the withdrawal of their objection to the proposed plan can be consideration for a contract." This appeal followed.

## II.     The City's Cross-Appeal

¶ 12     Because the City's cross-appeal presents an issue of subject matter jurisdiction, we address it first. *See In re Estate of Gonzalez,* 2024 COA 63, ¶ 10. The City contends that the district court erred by denying its C.R.C.P. 12(b)(1) motion to dismiss on the basis that the CGIA deprived the court of subject matter jurisdiction over the Frydendalls' claims. We disagree.

7

## A. Applicable Law and Standard of Review

¶ 13　Under the CGIA, "[a] public entity is immune from liability in all claims for injury that lie in tort or could lie in tort." § 24-10-106(1), C.R.S. 2025. The immunity provided by the CGIA does not extend to "actions grounded in contract." *City of Aspen v. Burlingame Ranch II Condo. Owners Ass'n*, 2024 CO 46, ¶ 30.

¶ 14　When a plaintiff frames their claims as contractual or quasi-contractual rather than as tort claims, the trial court must determine whether the "claims 'lie in tort or could lie in tort' and are thus barred by the CGIA." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003-04 (Colo. 2008) ("[C]laims that could arise in both tort and contract are barred by the CGIA, while claims arising solely in contract are not subject to the CGIA."). "[T]he form of the complaint is not determinative of the claim's basis in tort or contract"; rather, a trial court "must consider the nature of the injury and the relief sought." *Id.* at 1003; *see Burlingame Ranch*, ¶ 31 ("Although the relief requested [is not] dispositive, it informs our understanding of the nature of the injury and the duty allegedly breached.").

¶ 15    "The determination of whether there is immunity under the CGIA is a question of subject matter jurisdiction to be decided pursuant to C.R.C.P. 12(b)(1)." *Moran v. Standard Ins. Co.*, 187 P.3d 1162, 1164 (Colo. App. 2008). The plaintiff bears the burden of establishing that the public entity is not immune under the CGIA and that the trial court has jurisdiction over the claim. *Henderson v. City & County of Denver*, 2012 COA 152, ¶ 21.

**B.    The District Court Did Not Err by Denying the City's Motion to Dismiss Under the CGIA**

¶ 16    Shortly after the Frydendalls filed their original complaint, the City moved to dismiss their claims under C.R.C.P. 12(b)(1) on the basis that the claims, although framed as contract claims, could lie in tort and therefore fell within the scope of the CGIA's immunity provisions. The district court first concluded that the Frydendalls' claims "lie in tort or could lie in tort, specifically the torts of negligence and civil conspiracy." The court noted that the Frydendalls did not "identify[] any kind of contract" but "repeatedly emphasized the 'duties' that [the City] owes all of its customers." Although the court acknowledged that the referenced "duties" "could conceivably relate to contractual claims," it reasoned that

they "could have been styled by plaintiffs as tort claims." The court also noted that the Frydendalls did not seek specific performance but instead sought money damages, including punitive damages, which the court determined to be more consistent with tort claims than contract claims. *See Watson v. Cal-Three, LLC*, 254 P.3d 1189, 1197 (Colo. App. 2011) (Colorado law "does not recognize a claim for punitive damages predicated upon breach of contract.").

¶ 17    Nonetheless, the court determined that the CGIA waives immunity for public entities when the claims allege injuries arising out of the entity's "operation and maintenance of any public water facility." § 24-10-106(1)(f). And because the Frydendalls' claims alleged injuries arising out of the City's construction and installation of a new water conveyance system, the court concluded that the public water facility exception applied and that the City was not immune under the statute.

¶ 18    As directed by the court, the Frydendalls filed an amended complaint, revising their allegations to more specifically allege the creation of a contractual agreement and the City's subsequent breach of that agreement. The City again moved to dismiss, reasserting its arguments that it was immune from liability under

the CGIA. In granting the City's motion, the court merely incorporated by reference its prior ruling without considering the more detailed allegations in the amended complaint.

¶ 19  In its cross-appeal, the City contends that the district court "correctly found that the Frydendalls' claim did or could lie in tort" but erred by concluding that the City was not immune under the public water facility exception. This is so, the City contends, because the Frydendalls' alleged injuries arose from the City choosing to upgrade the water system, not from its operation and maintenance of that system. The Frydendalls argue that the court correctly determined that the City was not immune from their claims under the CGIA but erred by determining that their contract-based claims lie in tort or could lie in tort for the purposes of the statute. We will address the Frydendalls' claims separately.

¶ 20  First, after reviewing the Frydendalls' amended complaint — the operative complaint — we conclude that their breach of contract claim is grounded in contract and is thus outside the scope of the CGIA. *See Burlingame Ranch*, ¶ 30. In concluding otherwise, the district court appears to have considered only the allegations in the original complaint. But the Frydendalls filed an amended

11

complaint that included more specific allegations related to the City's alleged breach of contract.

¶ 21    For example, in the original complaint, the Frydendalls did not assert the breach of any specific agreement but instead listed a number of "duties" that the City owed to its "captive [water] customers." *See Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't*, 2021 CO 43, ¶ 42 (claims lie in tort or could lie in tort when the alleged injury arose out of the breach of a duty recognized in tort law).  However, in the amended complaint, the Frydendalls alleged that (1) the City entered into a contractual agreement to install a two-inch service line and maintain the same water volume to the Frydendalls' home in exchange for the Frydendalls' withdrawal of their objection to the project; (2) the City breached that agreement by installing a one-and-a-half-inch service line, which negatively impacted the water volume delivered to their home; and (3) as a result, the Frydendalls suffered foreseeable damages, including a loss of water volume, a loss in home value, a loss of "time and income" required to enforce the parties' agreement, and the cost of replacing the pipe.  While some of these categories of damages may be difficult to quantify monetarily — specifically, the

alleged loss of water volume — the amended complaint nevertheless requested compensation for injuries that flowed directly from the City's breach of the alleged contract. *See Giampapa v. Am. Fam. Mut. Ins. Co.,* 64 P.3d 230, 249 (Colo. 2003) (Bender, J., specially concurring) (damages for losses resulting from a promisor's breach are an appropriate remedy in contract law).

¶ 22    We acknowledge that the form of the complaint is not dispositive, *Robinson,* 179 P.3d at 1003, and that "the CGIA is less concerned with what the plaintiff is arguing and more concerned with what the plaintiff could argue," *id.* at 1005, but we decline to speculate as to what tort claims the Frydendalls could have asserted. Given the nature of the injuries alleged and the relief sought, the Frydendalls' "intentional breach of contract" claim is grounded in contract. *See id.* at 1003. Thus, we conclude that the CGIA did not deprive the court of jurisdiction over that claim. *See Burlingame Ranch,* ¶ 30. Accordingly, we affirm the court's order denying the City's C.R.C.P. 12(b)(1) motion as to that claim, albeit on different grounds. *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo. App. 2004) (we may affirm a trial court's ruling on any grounds supported by the record).

¶ 23    Second, we are unable to determine whether the CGIA applies to the Frydendalls' claim for "bad faith breach of contract and bad faith claim handling" because, as discussed more thoroughly below, we are unable to discern what claim the Frydendalls attempted to assert.  Even so, because we conclude that the court correctly dismissed the Frydendalls' second claim under C.R.C.P. 12(b)(5), any error in failing to dismiss it under C.R.C.P. 12(b)(1) is harmless.[1]  *See* C.R.C.P. 61 (an error is harmless if it does not affect the substantial rights of the parties); *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24 (an error affects the parties' substantial rights if it substantially influences the outcome of the case or impairs the basic fairness of the case itself).

---

[1] We acknowledge that, had the district court dismissed the Frydendalls' tort claims under the CGIA, the City may have been entitled to attorney fees.  *See* § 13-17-201, C.R.S. 2025; *Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo. App. 1996). However, the City did not seek attorney fees in its motion to dismiss or any other pleading filed with the district court.  Under these circumstances, we perceive no consequences flowing from the court's resolution of the Frydendalls' claims under C.R.C.P. 12(b)(5) rather than C.R.C.P. 12(b)(1).

## III. The Frydendalls' Appeal

¶ 24     The Frydendalls contend that the district court erred by dismissing their claims under C.R.C.P. 12(b)(5). We disagree.

### A. Applicable Law and Standard of Review

¶ 25     The purpose of a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted is to test the formal sufficiency of a plaintiff's complaint. *Wagner v. Grange Ins. Ass'n,* 166 P.3d 304, 306 (Colo. App. 2007). To determine whether a plaintiff stated a claim upon which relief may be granted under C.R.C.P. 12(b)(5), we employ the "plausibility standard." *Adams Cnty. Hous. Auth. v. Panzlau,* 2022 COA 148, ¶ 49 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *Warne v. Hall*, 2016 CO 50, ¶ 24. Under this standard, a complaint must "allege sufficient facts that, if taken as true, show plausible grounds to support a claim for relief." *Jagged Peak Energy Inc. v. Okla. Police Pension & Ret. Sys.,* 2022 CO 54, ¶ 25. The pleading party must set forth factual allegations that plausibly support each of the basic elements of the asserted claim. *Panzlau,* ¶ 51.

¶ 26    We review de novo a district court's C.R.C.P. 12(b)(5) dismissal. *Scott v. Scott,* 2018 COA 25, ¶ 17. In doing so, we apply the same standards as the district court, accepting the well-pleaded factual allegations in the complaint as true and viewing those allegations in the light most favorable to the plaintiff. *Patterson v. James,* 2018 COA 173, ¶ 16. However, we are not bound by conclusory allegations or bare legal conclusions that are couched as factual allegations. *Norton v. Rocky Mountain Planned Parenthood, Inc.,* 2018 CO 3, ¶ 7.

### B. Breach of Contract Claim

¶ 27    The Frydendalls contend that the district court erred by dismissing their breach of contract claim for lack of consideration because it misunderstood what consideration the Frydendalls alleged and, consequently, "violated" the "peppercorn rule." The City argues that the Frydendalls' withdrawal of their objection to the size of the service line did not constitute adequate consideration for the purported contract but, even if it did, the Frydendalls failed to allege mutual assent to the terms of the purported contract. We conclude that the court did not err by dismissing the Frydendalls' contract claim for failure to state a claim under C.R.C.P. 12(b)(5).

## 1.    Preservation

¶ 28    As an initial matter, the City argues that the Frydendalls did not preserve their consideration-related contentions. Preservation is a threshold question; in civil cases, we do not address contentions that have been insufficiently preserved. *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 22. An issue is preserved when it is brought to the court's attention, and the court has an opportunity to rule on it. *In re Marriage of Turilli*, 2021 COA 151, ¶ 12. Preservation does not require that a party use talismanic language, *In re Estate of Owens*, 2017 COA 53, ¶ 21, but it does require that a party present the "sum and substance of the argument it now makes on appeal" to the trial court, *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (citation omitted).

¶ 29    In the City's motion to dismiss the amended complaint, it argued, among other things, that the Frydendalls did not allege "there was any discussion of or bargaining for consideration to support the alleged agreement." The Frydendalls responded that the City's motion ignored their allegation that, in exchange for the City's agreement to use a two-inch service line, they withdrew their objection to the City's new system.

¶ 30    We acknowledge that the Frydendalls' response did not mention the words "consideration" or "peppercorn" or substantively argue that the alleged consideration — withdrawing an objection to the new system — was sufficient to create a binding contract. But the City did not argue that the *value* of the alleged consideration was insufficient, it argued that there was *no* consideration. The adequacy of the alleged consideration did not clearly arise until the district court dismissed the breach of contract claim because the alleged promises "were not exchanged for any *valuable* consideration from [the Frydendalls]." (Emphasis added.) Because the court ruled this way, we conclude that the contention raised on appeal — the adequacy of the alleged consideration — was sufficiently preserved for appellate review. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 23 (because the trial court ruled on the issue, it was preserved).

### 2. The District Court Did Not Err by Dismissing the Frydendalls' Breach of Contract Claim Under C.R.C.P. 12(b)(5)

¶ 31    Consideration is "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee." Black's Law Dictionary 384 (12th ed. 2024); *Int'l Paper*

18

*Co. v. Cohen*, 126 P.3d 222, 225 (Colo. App. 2005). As relevant here, "[c]onsideration may take the form of forbearance by one party to refrain from doing something that it is legally entitled to do." *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011). Consideration does not need to be of great value; rather, "any benefit to a promisor or any detriment to a promisee at the time of the contract — no matter how slight — constitutes adequate consideration." *Id.* (citing *W. Fed. Sav. & Loan Ass'n of Denv. v. Nat'l Homes Corp.*, 445 P.2d 892, 897-98 (Colo. 1968), and 2 Joseph M. Perillo & Helen H. Bender, *Corbin on Contracts* § 5.14, at 70 (rev. ed. 1995) (a "peppercorn" is sufficient consideration)).

¶ 32    The district court understood the Frydendalls to have alleged that the consideration they exchanged for the City's promise to use a larger service line was the withdrawal of their objection to the new water system. The court observed that the City was going to install the new system on the Frydendalls' street regardless of the Frydendalls' objection. That observation was consistent with the Frydendalls' allegation that the City informed them that it "would disconnect the water to their home if they didn't agree to [the City's] plans." The court essentially concluded that, because the

19

Frydendalls' objection would not have impacted the City's installation of the new system, the withdrawal of that objection was of no benefit to the City and no detriment to the Frydendalls.

¶ 33    On appeal, the Frydendalls contend that the court misunderstood the nature of their alleged consideration. Specifically, they assert that they withdrew their overarching objection to the new water system before they separately raised concerns about the smaller service line.[2]  They argue that their contract with the City specifically "involved [the] Frydendall[s'] objection to [the City's] plan to use inadequate [one-and-a-half-inch] piping" to connect their home to the new system.  They further contend that the City received value from the withdrawal of their objection to the City's planned use of the smaller pipe by avoiding construction delays.

---

[2] Notably, the Frydendalls argue in their opening brief that they relinquished their overarching objection to the new water system before they contracted with the City to use a larger service pipe on their home.  But the amended complaint alleges that the Frydendalls "withdrew their objections and agreed to [the City's] alteration of the water delivery system" in exchange for the City's "agreement to use [two-inch] piping."

¶ 34    Even accepting the Frydendalls' characterization of their complaint as true, they fail to plausibly allege bargained-for consideration to sustain a breach of contract claim. The Frydendalls allege that, had they maintained their objection to the new water system, the City would have disconnected the water to their home. Based on that allegation, it is clear that the Frydendalls benefited from withdrawing their objection by remaining connected to the City's water infrastructure. But they do not explain how the City benefited from the withdrawal of the objection, nor do they explain what detriment — no matter how slight — they suffered as a result. And although the Frydendalls argue for the first time on appeal that the City benefited by avoiding construction delays, they made no such allegation in their amended complaint and made no such argument in their response to the City's motion to dismiss.[3] *See In re Marriage of Fabos*, 2019 COA 80, ¶ 31 n.4 (we do not address arguments raised for the first time on appeal).

---

[3] During oral argument, counsel for the Frydendalls also argued that the Frydendalls forfeited an administrative appeal in exchange for the City's agreement to install a larger service line, but that allegation too is absent from the amended complaint.

21

¶ 35    But even if the mere withdrawal of an objection amounted to sufficient forbearance to constitute adequate consideration, *see Lucht's Concrete Pumping*, 255 P.3d at 1061, the Frydendalls also failed to allege that the parties had a meeting of the minds regarding the contract terms. *See Denv. Pressed Brick Co. v. Le Fevre*, 138 P. 434, 436 (Colo. App. 1913) ("It is true that, however infinitesimal a thing may be, or may afterwards prove to be, that is offered and accepted as a consideration for a contract, it may be sufficient, *if it be offered and accepted as a consideration, and not as a gift, or under a state of facts that discloses a gratuitous undertaking.*" (emphasis added)).

¶ 36    "[T]he formation of a contract requires mutual assent to the terms of the contract and legal consideration for which the parties bargained." *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 47. Mutual assent to the terms of the contract requires "a meeting of the minds." *Id.* (citation omitted). "If the parties fail to agree to sufficiently definite and certain terms, there is no meeting of the minds, and hence, no valid contract." *Id.* at ¶ 49 (citation omitted).

¶ 37    In their amended complaint, the Frydendalls alleged that the parties formed a binding contractual agreement when (1) the

22

Frydendalls "expressed concern" regarding the size of the planned service line; (2) the City "agreed" to use a two-inch service line; and (3) in response to that "agreement," the Frydendalls "withdrew their objections and agreed to [the City's] alteration of the water delivery system." These are conclusory statements that an "agreement" existed that we need not accept as true. *Norton*, ¶ 7; *Warne*, ¶ 9. The Frydendalls do not allege *facts* reflecting that the parties had a meeting of the minds sufficient to form a contract — particularly regarding the necessary bargained-for consideration. For example, the Frydendalls did not allege that the parties discussed and reached a mutual understanding about the value of the Frydendalls' objection or the impact that maintaining the objection might have on the project such that the City would offer something of value — a larger service line — in exchange for the withdrawal of the objection. And given the other allegations in the amended complaint about the City intending to proceed with the project *despite* the Frydendalls' objection, it is not reasonable to infer that the City understood the Frydendalls' objection to have any value or impact on the project. Thus, even accepting that the Frydendalls' withdrawal of their objection amounted to adequate consideration,

23

they nevertheless fail to plausibly allege the parties' mutual assent to the terms of the purported contract. *See Univ. of Denv.*, ¶ 47.

¶ 38 In the absence of any plausible allegation concerning the parties' mutual assent or that the City benefited from the Frydendalls' withdrawal of an objection, we cannot conclude that the court erred by dismissing the breach of contract claim. *See Warne*, ¶ 9.

## C.    Bad Faith

¶ 39 The Frydendalls contend that the district court erred by dismissing their "bad faith" claim because the "[c]ourt did not make specific findings of fact to support its dismissal." True, the court appears to have characterized the Frydendalls' second claim as a "request for sanctions" and deemed it "meritless for the reasons set forth in the [City's] reply," without further explanation. But we review a C.R.C.P. 12(b)(5) dismissal de novo, applying the same standards as the district court. *Patterson*, ¶ 16. So, it is not enough to simply say that the district court got it wrong; the Frydendalls must affirmatively demonstrate why their claim should have survived the City's motion to dismiss. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not

24

consider a bald legal proposition presented without argument or development. Counsel must inform the court both as to the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions." (citation omitted)); C.A.R. 28(a)(7)(B) (the appellant bears the burden of providing us with "a clear and concise discussion of the grounds upon which the party relies in seeking a reversal or modification of the judgment . . . with citations to the authorities").

¶ 40    On appeal, the Frydendalls have not explained what claim they intended to assert as the second claim in their amended complaint, what the elements of that claim are, or how the facts alleged plausibly satisfy each of those elements. *See Jagged Peak Energy*, ¶ 25. And we are unable to discern these things from our own review of the amended complaint.

¶ 41    The second claim has some of the markings of a claim for breach of the duty of good faith and fair dealing, which — outside the insurance context — is merely a breach of contract claim that would fail in the absence of a contract. *See Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) ("In most contractual relationships, a breach of this duty will only result in

25

damages for breach of contract and will not give rise to tort liability."). By referring to the City's "bad faith claim handling," the second claim could be intended as a tort claim for bad faith breach of contract. But such a claim is unique to the insurance context. *See id.* ("Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." (citation omitted)). The Frydendalls did not allege the existence of any insurance contract between them and the City.

¶ 42 The second claim also includes passing references to fraud, which must be pleaded with particularity, *see* C.R.C.P. 9(b); perjury, which is a criminal offense, § 18-8-502, C.R.S. 2025; contempt of court, which is not a standalone claim but a proceeding to enforce existing court orders subject to the requirements of C.R.C.P. 107; and abuse of process, which requires proof of "the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve," *Walker v. Van Laningham,*

148 P.3d 391, 394 (Colo. App. 2006).[4]  The second claim could also

be construed — as the district court did— as a request for

sanctions for the City's alleged falsification of an exhibit filed with

the motion to dismiss, which would be governed by C.R.C.P. 37.

¶ 43     On appeal, the Frydendalls argue that the district court erred

by dismissing the second claim because (1) the court erroneously

ruled there was no contract; (2) the City falsified an exhibit it

attached to its motion to dismiss; (3) the City engaged in "bad faith

claim handling"; and (4) the City's conduct in resolving a dispute

over sewage cleanup in another customer's home demonstrates its

"outrageous . . . bad faith practices."  But these contentions merely

foment our confusion about what claim they intended to assert.

¶ 44     Moreover, the Frydendalls cite no legal authority in this

section of their brief beyond (1) a general reference to a

ninety-year-old case, *In re Holmes' Estate*, 56 P.2d 1333 (Colo.

---

[4] Although the Frydendalls point to a discrepancy between two versions of a testing report to claim that the City "attempted to deceive the [c]ourt and defraud the [Frydendalls]," they allege no facts from which one could reasonably infer that the discrepancy resulted from fraud or deception.  Similarly, the Frydendalls allege no facts to support a claim that the City engaged in criminal conduct.

1936), that seems to address evidence spoliation; and (2) a citation to *Lucht's Concrete Pumping*, 255 P.3d at 1061, which does not support their assertion that intent cannot be decided by the court on a C.R.C.P. 12(b) motion to dismiss. *See People in Interest of G.R.N.M.*, 228 P.3d 976, 978 (Colo. App. 2010) (legal arguments require the advocate to connect law to facts).

¶ 45    Absent a clear articulation of what claim the Frydendalls intended to raise, we cannot determine whether the facts alleged in the amended complaint "show plausible grounds to support a claim for relief." *Jagged Peak Energy*, ¶ 25. Thus, we conclude that the district court did not err by dismissing the Frydendalls' bad faith claim under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief may be granted. *See id.*

## IV.    Disposition

¶ 46    We affirm the district court's judgment.

JUDGE FREYRE and JUDGE SCHUTZ concur.