**Roger D. BERG, Petitioner/Cross–Respondent,**

v.

**STATE BOARD OF AGRICULTURE and Public Employees' Retirement Association of Colorado, Respondents/Cross–Petitioners.**

**No. 94SC629.**

Supreme Court of Colorado,
En Banc.

July 1, 1996.

Rehearing Denied July 29, 1996.

Morrisard, Rossi, Cox, Kiker & Inderwish, Professional Corporation, Marc J. Kaplan, Aurora, Law Offices of Bennett S. Aisenberg, P.C., Bennett S. Aisenberg, Denver, for Petitioner/Cross–Respondent.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Timothy R. Arnold, Deputy Attorney General, Jane R. Christman, First Assistant Attorney General, Tort Litigation Section, Denver, for Respondent/Cross–Petitioner State Board of Agriculture.

Hamilton and Faatz, A Professional Corporation, John T. Willson, Gregory W. Smith, Denver, for Respondent/Cross–Petitioner Public Employees' Retirement Association of Colorado.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review *Berg v. State Board of Agriculture and Public Employees' Retirement Association of Colorado,* No. 92CA1760 slip op. (Colo.App. July 14, 1994) (not selected for official publication), in which the court of appeals affirmed the denial of the defendants' motion for summary judgment on the basis of sovereign immunity, but upheld the granting of the motion on the basis of the statute of limitations. Four grounds are before us for certiorari review:

(1) Whether the court of appeals erred in determining that the statute of limitations for a claim of nonpayment of medical services begins to run as of the date upon which the policy failed to provide coverage rather than when the claim for such expenses was denied;

(2) Whether the statute of limitations, section 13–80–101(1)(a), 6A C.R.S. (1987), is triggered by breach of contract by a self-insurer if the self-insurer did not provide adequate notice of any policy change as required by section 24–51–1202(4), 10B C.R.S. (1988), and any other court of appeals decisions;

(3) whether the trial court erred in determining that the deletion of an endorsement to an insurance policy resurrects prior or language of that policy; and

(4) Whether the court of appeals erred in concluding that plaintiff's claims labeled "promissory estoppel" and "breach of contract" were not barred by the Colorado Governmental Immunity Act, sections 24–10–106, –108, 10A C.R.S. (1988), because they were not claims which lie in tort or could lie in tort.

We affirm the judgment of the court of appeals.

## I.

Petitioner, Roger D. Berg (Berg), a former employee of Colorado State University (CSU), initiated this action against the State Board of Agriculture (SBA), the governing board of CSU, and the Public Employees' Retirement Association of Colorado (PERA) (collectively defendants), to recover unpaid medical expenses related to two heart transplant surgeries performed on him in July and August of 1988.

Berg was employed by CSU from 1970 until he took medical disability retirement in June of 1984. His early retirement resulted from cardio myopathy, a heart disease with which he was diagnosed in 1978. From the time of his diagnosis, Berg knew that a heart transplant might be required. Berg's health insurance was provided through a group policy issued to CSU by the Prudential Insurance Company of America (Prudential group policy) from 1970 through 1986. As of the time of his retirement, the Prudential group policy provided coverage for heart transplant surgery.

Effective July 1, 1986, PERA was authorized by statute to provide health insurance to retirees, and CSU ceased providing its own insurance. Berg selected a group health plan offered by PERA and administered by American Medical International (AmiCare). This plan also covered heart transplants. A memorandum issued in April of 1986 by the CSU benefits officer stated that coverage under the PERA sponsored plan was comparable to or more favorable than coverage

under the Prudential plan.[1] In a memorandum dated June 1986, the officer stated that no coverage other than the PERA sponsored plan was necessary to maintain a retiree's "current level of benefits." The memorandum also advised that an "umbrella" insurance plan was not offered to the retirees under the age of 65, including Berg, because "the PERA plan reimbursements are equal to or greater than your current coverage."[2] CSU continued to pay Berg's health insurance premium to PERA as part of his retirement benefits package.

In the fall of 1986, after AmiCare abruptly announced it would no longer offer a health insurance plan, PERA selected Blue Cross and Blue Shield of Colorado (Blue Cross) as its new plan administrator. Berg, along with the other covered retirees in the AmiCare plan, received two letters dated August 22, 1986, and October 17, 1986, from the Executive Director of PERA, which assured them that their health care coverage would continue and that their benefits would remain the same.[3]

Berg also received a document that described the various plans offered by PERA including the Blue Cross plan. The description of the Blue Cross plan contained a disclaimer stating that the actual policy would be negotiated between Blue Cross and PERA. The booklet listed the general limitations and exclusions to the policy; heart transplant surgery was not mentioned. Berg alleges that in reliance on the information contained in the PERA letters and the descriptive document, he enrolled in the Blue Cross administered plan. Other HMOs were available to him and, for purposes of this appeal, the parties agree that Berg could have selected an HMO which provided coverage of heart transplants.

The Blue Cross administered plan took effect January 1, 1987, and included the following applicable provision under "Limitations and Exclusions":

Organ Transplants

If you or your Dependent is a recipient of an organ transplant, and is charged for the services furnished the donor, covered charges are allowed. *Only* the following transplant procedures will be covered:

a. Corneal (eye) transplant.

b. Kidney (renal) transplant.

c. Bone marrow transplant.

(emphasis in original). Berg at no time received a copy of the actual policy, but in the first half of 1987 he did receive a document summarizing the Blue Cross plan which clearly described the policy's exclusion of heart transplants in the language quoted above.

In June of 1987, endorsement number 5 was added to the Blue Cross policy. This endorsement deleted the section entitled "Organ Transplants" in the original policy, and provided the following substitution:

Organ Transplants:

Coverage for organ transplants is limited to the following procedures:

a. Corneal (eye) transplant.

b. Kidney (renal) transplant.

c. Bone marrow transplant.

If the participant or Dependent is a recipient of an organ transplant stated above, and is charged for services furnished to the donor, covered charges are allowed.

Berg renewed his insurance policy with Blue Cross effective January 1988. On March 9, 1988, endorsement number 6 was

1. The memorandum, from Personnel Service of CSU, stated that the University had reviewed the new plan to be administered through American Medical International, and determined that "major aspects (deductible, 'out-of-pocket' limits, and coverages) are comparable to or more favorable than the CSU Prudential plan."

2. The applicable paragraph of the memorandum, headed "RETIREES UNDER AGE 65," states that those retirees with no dependent coverage or with a dependent also under age 65 will have coverage through PERA only. "The AmiCare plan has a lower deductible and lower out-of-pocket maximum level than the current coverage. Therefore, no additional coverage is needed to maintain your current level of benefits."

3. The letter dated August 22, 1986, stated in relevant part: "I want to assure you that at no time will you be without the health care coverage for which you have enrolled. Your benefits will remain the same. You may continue to use the health care services provided under the AmiCare plan until we inform you differently."

added to the Blue Cross policy. It provided: "Endorsement Number 5 is deleted and is no longer applicable to the contract." In July 1988, Blue Cross published a new medical plan summary which was provided to Berg. The statement regarding organ transplants was identical to the statement in the 1987 policy summary quoted above.

In July and August of 1988, Berg underwent two heart transplant surgeries. Blue Cross' representatives denied Berg's claims for medical expenses on the basis of the organ transplant exclusion. PERA representatives reviewed the claims and affirmed the denial of coverage on September 12, 1989.

On September 6, 1990, Berg filed suit against SBA and PERA for breach of contract, promissory estoppel, and negligent misrepresentation, and against Blue Cross for breach of contract. SBA and PERA filed separate motions to dismiss, contending that because the cause of action was or could be based in tort, it was barred by the Governmental Immunity Act, section 24–10–108, 10A C.R.S. (1988), or alternatively that the complaint failed to state a claim upon which relief could be granted.

Defendants' motions were granted only with respect to the negligent misrepresentation claims. SBA and PERA then filed answers asserting, among other defenses, that plaintiff's claims were barred by the applicable statutes of limitations. Their subsequent motions for summary judgment on that basis were granted; plaintiff's motion for reconsideration was denied.[4]

The court of appeals affirmed the judgments of the trial court. It held that Berg's claims for promissory estoppel and breach of contract were not barred by sovereign immunity, and it affirmed the award of summary judgment although its reasoning differed from that of the trial court. The court of appeals found that plaintiff failed to establish a genuine factual controversy regarding the running of the statute of limitations, and that defendants had not engaged in the type of affirmative conduct that would justify application of estoppel.

For the reasons stated below, we affirm the decision of the court of appeals.

## II.

Because of the jurisdictional implications, we will address the fourth certiorari issue first. On cross-petition, the defendants questioned whether the court of appeals erred in concluding that Berg's claims labeled "promissory estoppel" and "breach of contract" were not barred by the Colorado Governmental Immunity Act, section 24–10–108, 10A C.R.S. (1988). We agree with the court of appeals, and find that the claims asserted here do not and cannot lie in tort, and thus are not barred by the Colorado Governmental Immunity Act (CGIA).

The CGIA provides that a public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort unless the injury is among those for which immunity has been expressly waived. Colorado Governmental Immunity Act, § 24–10–108, 10A C.R.S. (1988). The act was not intended to apply to actions grounded in contracts. *Grimm Constr. Co., Inc. v. Denver Bd. of Water Comm'rs*, 835 P.2d 599 (Colo.App.1992); *Elliott v. Colorado Dept. of Corrections*, 865 P.2d 859 (Colo.App.1993). Defendants are correct in noting that the form of the complaint is not determinative of the claim's basis in tort or contract. *City and County of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 764 (Colo.1992). In resolving whether a plaintiff's claim is barred by the CGIA, the "dispositive question" is whether the claim is a tort claim or could be a tort claim for purposes of analysis under the CGIA. *Board of County Comm'rs of Summit County v. DeLozier*, 917 P.2d 714, 716 (Colo.1996); *Desert Truck Sales*, 837 P.2d at 764.

Defendants argue that it is important to distinguish between complaints that lie strictly in contract and those that lie in a contract/tort combination. If the action sounds

---

**4.** Berg proceeded to trial against Blue Cross on March 30, 1992. Final judgment on this claim was entered on October 22, 1992.

in tort, "the existence of a contractual relationship between the parties does not change the nature of the action." *Sussman v. University of Colorado Health Sciences Center*, 706 P.2d 443, 444 (Colo.App.1985). Defendants reason that because the same factual basis underlies all of the claims, they are all necessarily based in tort. We do not agree.

■ We acknowledge that the promissory estoppel claim is similar to the claim of tortious negligent misrepresentation. However, as this court recently has held, promissory estoppel is a distinct contract claim grounded in section 90(1) of the *Restatement (Second) of Contracts*. *DeLozier*, at 716. Under Colorado law, the elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that promise would induce action or forbearance by the promisee; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice. *Centennial–Aspen II Ltd. Partnership v. City of Aspen*, 852 F.Supp. 1486 (D.Colo.1994). The doctrine represents a modest extension of the basic contract principle that one who makes promises must be required to keep them. *DeLozier*, at 716. "A promise that is binding pursuant to the doctrine of promissory estoppel is a contract...." *DeLozier*, at 716.

The determination whether a particular claim of promissory estoppel is actually a tort claim for purposes of the CGIA must be made on a case-by-case basis. By barring not only the tort claim but also claims which could lie in tort, the CGIA requires the court to examine the pleadings and undisputed evidence closely. When, as here, the defending governmental entities have moved for summary judgment, those entities have the burden of demonstrating that no genuine issue of material fact is present. The plaintiff, as the nonmoving party, is entitled to receive the benefit of any favorable inferences that may be drawn from the evidence. *CenCor, Inc. v. Tolman*, 868 P.2d 396 (Colo.1994).

■ Defendants argue that the situation was actually one of equitable estoppel. To establish a claim of equitable estoppel, "the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the true facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury". *Committee for Better Health Care for All Colo. Citizens v. Meyer*, 830 P.2d 884, 891–92 (Colo.1992). Equitable estoppel, because it is based on the misrepresentation of facts, is fundamentally a tort theory. *Lehman v. City of Louisville*, 857 P.2d 455, 457 (Colo. App.1992); *Franks v. City of Aurora*, 147 Colo. 25, 362 P.2d 561, 564 (1961). The CGIA is applicable to such claims. *Lehman*, 857 P.2d at 457.

■ In *DeLozier*, we compared and contrasted promissory estoppel and equitable estoppel. 917 P.2d at 717. We reached the following conclusion:

> In the case before us, DeLozier brought a promissory estoppel claim against the Board based upon the Board's alleged promise to hire DeLozier as a paramedic in the future. The essence of DeLozier's claim is that the Board breached its promise to DeLozier and that she detrimentally relied on the Board's promise. DeLozier's claim therefore falls under section 90 of the *Restatement (Second) of Contracts*. DeLozier does not claim that the Board misrepresented any facts to her, and the facts that support DeLozier's claim could not support a claim for fraud or misrepresentation. Thus, DeLozier's claim is properly characterized as one of promissory estoppel rather than equitable estoppel. As such, DeLozier's claim against the Board is one that lies in contract rather than tort and is not barred by the GIA.

We reach the same result here. Berg's claims were premised specifically on the alleged facts that defendants (1) promised to provide health care coverage at a level at least equal to that which plaintiff received at the time of his retirement, and (2) failed to provide such coverage. This is a contractual issue, and defendants are not immune to liability for any breach.

■ Having determined that the CGIA does not afford defendants protection from

plaintiff's contract claims, we next address the statute of limitations question.

### III.

### A.

Berg's complaint alleged breach of contract and promissory estoppel against both PERA and SBA, claiming that the coverage provided by Blue Cross through PERA did not provide benefits equal to or greater than the Prudential group policy coverage provided by SBA prior to implementation of the PERA plan. Both defendants individually filed motions for summary judgment, stating that the claims were barred by two statutes of limitation: the three-year limitation applicable to actions for breach of contract, section 13–80–101(1)(a), 6A C.R.S. (1987), and the two year limitation applicable to actions against public or governmental entities, section 13–80–102(1)(h), 6A C.R.S.(1987). Summary judgment was granted to PERA on March 4, 1992, and to SBA on March 26, 1992. The trial court ruled that, based on the chronology of events provided by Berg, his causes of action against PERA and SBA accrued at the latest in mid–1987, when he received the description of the Blue Cross policy, and should have learned that heart transplants were not a covered benefit. The trial court did not address the two-year statute of limitations because it found Berg's claims were barred by the three year limitation.

The summary judgments were affirmed by the court of appeals, although on different grounds. The court of appeals did not rely on the statute of limitations but instead held that the defendants were entitled to summary judgment on the merits of plaintiff's breach of contract and promissory estoppel claim. The court of appeals noted that, ab-

sent certain circumstances not present in this case, the failure to read and review written materials furnished by a party to a contract in the context of assertion of a breach by the other party has not been excused. *See Rasmussen v. Freehling*, 159 Colo. 414, 412 P.2d 217 (1966) (one cannot claim not to be bound by a contract he signs but fails to read); *Cordillera Corp. v. Heard*, 41 Colo.App. 537, 592 P.2d 12 (1978), *aff'd*, 200 Colo. 72, 612 P.2d 92 (1980) (a party is presumed to know the contents of a contract signed by that party.) The court concluded that Berg had failed to meet his burden of demonstrating a genuine factual controversy with respect to his claims and the defendants were entitled to judgment as a matter of law.

■ We hold that Berg's contract claims were barred by the three year statute of limitations. Like the trial court, we need not address the shorter two year statute of limitations because Berg's complaint was filed more than three years after the claims arose. The complaint was served on CSU on November 7, 1990, and on PERA on November 12, 1990. The claims arose when the alleged contract was breached on January 1, 1987.[5]

Berg argues that the statute of limitations for a claim of nonpayment of medical services does not begin to run as of the date upon which the policy failed to provide coverage but only begins to run when the claim for such expenses was denied. He has mischaracterized the lower courts' decisions as well as his own claim.

■ Although Berg's overriding concern is the non-payment of bills resulting from his two heart transplants, that specific complaint was alleged only against Blue Cross. The claim already has been litigated with Blue Cross, and it is separate from the claims against PERA and SBA currently at issue.[6]

---

5. Even if the running of the statute of limitations were tolled until Berg's receipt of the descriptive booklet from Blue Cross, his filing was not timely. In its order dated March 4, 1992, granting PERA's motion for summary judgment, the trial court stated that considering the plaintiff's education and experience, his medical condition, the circumstances of his change of insurance policies, and his admission that he received the description of the Blue Cross policy in the first part

of 1987, he should have discovered PERA's breach of contract "at the latest by mid–1987."

6. Following a jury trial, the court entered judgment in favor of Berg and against Blue Cross for principal in the amount of $3,655.64 and prejudgment interest in the amount of $918.25 for a total judgment of $4,573.89, plus costs in the amount of $1,092.35. The judgment represented covered benefits Blue Cross had not paid to Berg. Blue Cross was not held liable for the costs

Berg's complaint alleges SBA and PERA were in breach of contract because they agreed to provide him with continued insurance coverage through PERA, with equal or greater benefits than the Prudential coverage, and did not do so.[7] Similarly, in his Response in Opposition to Colorado State University's and Public Employees' Retirement Association's Motion to Dismiss, Berg states that SBA's and PERA's offer to provide a health insurance program which had benefit coverage at least equal to that under the Prudential coverage, and plaintiff's acceptance, constituted a contract between the parties, breached by defendants' failure to provide such coverage. Although Berg now argues that SBA and PERA were provided notice of his claims for failure to pay benefits, he has consistently addressed the alleged breach of contract by SBA and PERA with reference to the level of coverage provided. While the positions of the two defendants are slightly different, neither SBA nor PERA was contractually obligated to pay medical expenses. Their contractual obligation, according to Berg's claim, was to provide health coverage to plaintiff at a level equal to or greater than that available at his retirement. If a breach occurred, it was at the time when the Blue Cross policy came into effect.

Berg then argues that PERA retained the power to amend, modify, or delete the language in the policy, and it was therefore "only speculation as to whether Berg's benefits would not be equal to or better as promised at the time he underwent heart transplant surgery." Berg reasons that because PERA could have changed the coverage to include heart transplants before he underwent the procedures, Berg was not damaged and his cause of action for breach of contract did not arise until coverage was denied.

We are not persuaded. The record does not establish that PERA had this authority, but even if such authority were conceded, the facts before the Court show that the Blue Cross plan, effective January 1, 1987, did not cover heart transplants. In *Wota v. Blue Cross and Blue Shield of Colo.*, 831 P.2d 1307 (Colo.1992), this court affirmed the court of appeals' holding that the language in the Blue Cross summary booklet was unambiguous in excluding coverage for medical expenses related to heart transplant surgery. Berg's supposition that PERA could have corrected the breach does not change the date when the breach occurred.

Berg then argues that under the theory of anticipatory breach of contract, a claim for relief arising from non-performance may arise when performance should have been completed. This approach does not change our analysis. The contractual obligation of SBA and PERA as alleged by Berg was to provide a specified level of coverage. Breach occurred when the non-conforming policy became effective, and Berg should have been aware of the non-conformance through the exercise of reasonable diligence.

Thus, the statute of limitations for the breach of contract, and the related promissory estoppel, also contractual in nature, began to run in January of 1987. Berg's failure to file suit on those claims within the statutory period bars them.

### B.

Berg's second issue on certiorari questioned whether the statute of limitations, section 13–80–101(1)(a), 6A C.R.S. (1987) is triggered by breach of contract of a self-insurer if the self-insurer did not provide adequate notice of any policy change as required by section 24–51–1202(4), 10B C.R.S. (1988), and certain court of appeals decisions. Berg argues that because defendants failed

---

of the two heart transplant surgeries. That judgment is not before us on this appeal.

7. Berg's First Claim for Relief (Breach of Contract Against CSU) states in relevant part:

   20. Colorado State University, through its representatives, agreed to provide plaintiff with continued insurance coverage through PERA, with equal or greater benefits.

   21. The coverage provided by Blue Cross and Blue Shield of Colorado through PERA did not provide benefits equal to or greater than The Prudential Insurance Company of America coverage provided by Colorado State University prior to the PERA plan.

The wording of Berg's Fourth Claim for Relief (Breach of Contract against PERA) is almost identical, except PERA is named as the promisor.

to provide clear and conspicuous notice of the added exclusion in the new policy, they cannot rely on the policy's effective date to trigger the running of the statute. We reject his argument.

The court of appeals addressed this issue separately with respect to each defendant, but in both instances found Berg's contentions to be without merit. Because we are persuaded neither SBA nor PERA was a self-insurer for purposes of application of section 24–51–1202(4), 10B C.R.S. (1988), at the time this action arose, we affirm the ruling of the court of appeals with respect to this issue.

Plaintiff has not claimed that SBA's function was that of an insurance company. Rather, he alleges SBA violated the "common law" duty of an employer to provide clear and conspicuous notice to employees of a change in insurance coverage. In making this claim, Berg relies on a line of cases including *Dawes Mining Co., Inc. v. Callahan*, 246 Ga. 531, 272 S.E.2d 267 (1980)(employer's failure to provide adequate notice of any change in health insurance coverage renders an added exclusion ineffective); *City of Brunswick v. Carney*, 187 Ga.App. 634, 371 S.E.2d 201 (1988)(employer's failure to notify former employee of change in group health insurance carrier allows employee to recover for damages); and *Woodman Co., Inc. v. Adair*, 164 Ga.App. 603, 294 S.E.2d 579 (1982) (employer is liable when it misinforms employee about coverage availability.) These cases are factually distinguishable. In *Dawes*, it was the employer who selected and later changed the policy; further, the employee could not read, and was therefore dependent on the representations of the employer. By contrast, Berg is well educated, was provided a good deal of information, and had options other than the Blue Cross policy available to him. In *Brunswick*, the former employee was not notified about the change in carriers. *Woodman* did not involve a policy change at all, but rather a terminated employee who was mistakenly informed his health coverage would continue for thirty days when, in fact, he needed to convert to a new policy. We conclude SBA is not subject to the requirements of section 24–51–1202 or court decisions related to the duties of insurers.

Plaintiff does maintain PERA was a self-insurer, but we disagree. PERA is a creature of statute. Although it is now authorized to act as a self-insurer, prior to 1987 it was authorized only to prepare specifications for coverage. PERA is not subject to the laws of the state regulating insurance or insurance companies. Section 24–51–215, 10B C.R.S. (1988). Further, the evidence in the record before this court shows that PERA was in compliance with the statutory requirement that individuals enrolled in the PERA health care program be notified thirty days prior to any change. Section 24–51–1202(4) 10B C.R.S. (1988). PERA notified its members of the choice of health plans in its memoranda dated October 6, 1986, and October 17, 1986, more than sixty days prior to the effective date of the new Blue Cross plan.

Under the facts of this case, neither SBA nor PERA was a self-insurer at times pertinent to this case. The statute of limitations was triggered by the breach of contract that occurred January 1, 1987.

## C.

Berg's final issue for certiorari was whether the trial court erred in determining that the deletion of an endorsement to an insurance policy resurrects prior language of that policy. This issue goes to the merits of his claim. Because we have determined that plaintiff's suit is barred by the statute of limitations, we do not reach this issue.

## IV.

Accordingly, we affirm the decision of the court of appeals.