The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 28, 2018

## 2018COA92

**No. 17CA0793, Falcon Broadband, Inc., v. Banning Lewis Ranch
Metropolitan District No. 1 — Contracts; Government — Local
Government Budget Law of Colorado — Expenditures Not to
Exceed Appropriation**

This case concerns a dispute between a residential
development district and a provider of internet and cable services
over whether the contract between them is enforceable. Among the
issues the division addresses is whether the contract violates
section 29-1-110, C.R.S. 2017, which, as a general matter,
precludes governmental entities from entering into contracts that
obligate such an entity to expend funds beyond those already
appropriated. The division holds that the contract violates section
29-1-110, and is therefore void, because it is a multi-year contract
that does not provide that the obligation to pay is subject to annual
appropriations.

COLORADO COURT OF APPEALS     **2018COA92**

Court of Appeals No. 17CA0793
El Paso County District Court No. 16CV30823
Honorable Thomas K. Kane, Judge

Falcon Broadband, Inc., a Colorado corporation,

Plaintiff-Appellant and Cross-Appellee,

v.

Banning Lewis Ranch Metropolitan District No. 1; Oakwood Homes, LLC; Chad M. Ellington; Charles P. Leder; Jeffrey P. Carlson; Mike Tinlin; William Ritchie; Bruce Rau; MREC Oakwood Colorado Ranch, LLC; MREC Oakwood Colorado Investments, LLC; MREC Colorado Land Investments, LLC; MREC Oakwood Colorado IV-VI, LLC; and MREC Oakwood Colorado, LLC,

Defendants-Appellees and Cross-Appellants.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Ashby and Harris, JJ., concur

Announced June 28, 2018

---

Hamre, Rodriguez, Ostrander & Dingess, P.C., Donald M. Ostrander, Stephanie M. Ceccato, Paul Rufien, Denver, Colorado, for Plaintiff-Appellant and Cross-Appellee

Vaughan & DeMuro, Gordon L. Vaughan, Ann B. Smith, Colorado Springs, Colorado; Spencer Fane, LLP, Jamie N. Cotter, Jacob F. Hollars, Denver, Colorado; Gordon & Rees LLP, John R. Mann, Edward J. Hafer, John D. Keen, Denver, Colorado, for Defendants-Appellees and Cross-Appellants

¶ 1    In 2007, Falcon Broadband, Inc. (Falcon), signed a contract — called the Bulk Services Agreement (BSA) — with Banning Lewis Ranch Metropolitan District No. 1 (the District) to provide internet and cable services to the residents of the Banning Lewis Ranch area.  Five years later, Falcon sued the District, Oakwood Homes, LLC (the developer), several of Oakwood Homes' sister companies (we refer collectively to all of the related Oakwood entities as Oakwood),[1] and a number of individuals who are affiliated with Oakwood and serve as directors on the District's board (Directors) after the District disavowed the BSA.[2]  On motions from all defendants, the district court dismissed Falcon's complaint in part as barred by the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 to -120, C.R.S. 2017, and granted summary judgment in defendants' favor on the remaining claims not subject to dismissal under the CGIA.

---

[1] The affiliated companies are MREC Oakwood Colorado Ranch, LLC; MREC Oakwood Colorado Investments, LLC; MREC Colorado Land Investments, LLC; MREC Oakwood Colorado IV-VI, LLC; and MREC Oakwood Colorado, LLC.

[2] The remaining individual defendants are Chad M. Ellington, Charles P. Leder, Jeffrey P. Carlson, Mike Tinlin, William Ritchie, and Bruce Rau.

¶ 2  Falcon appeals the judgment.  The District and the Directors cross-appeal the district court's denial of their requests for attorney fees.  Though we conclude that the district court incorrectly applied the CGIA in certain respects, we ultimately affirm the judgment in favor of all defendants in all respects except one; we reverse the judgment for Oakwood on the unjust enrichment claim and remand for further proceedings on that claim.  We also affirm the district court's denial of the District's requests for attorney fees.  But we reverse the district court's denial of the Directors' request for attorney fees and remand for a determination of the Directors' reasonable attorney fees incurred in the district court and on appeal.

## I.  Background

¶ 3  Under the BSA, the District granted Falcon the exclusive right to provide internet and cable services to residents of Banning Lewis Ranch in exchange for a monthly per resident fee.  The BSA doesn't have a definite duration, but says that it remains in effect until 2,700 homes in the development are occupied.  That hasn't yet occurred.

¶ 4     After the original developers of Banning Lewis Ranch went bankrupt, Oakwood acquired the property in 2012, appointed a new slate to the District's board of directors (all of whom have some association with Oakwood), and decided it wasn't happy with the BSA. The parties tried to negotiate modifications to the BSA, without success. So the District, saying that the BSA was invalid, stopped paying Falcon and stopped collecting fees from residents.

¶ 5     In its amended complaint, Falcon asserts a total of seven claims against defendants. Against the District, Falcon asserts claims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) unjust enrichment; (5) civil conspiracy; and (6) declaratory judgment.[3] Against Oakwood, Falcon asserts claims for (1) unjust enrichment; (2) tortious interference with contract; (3) civil conspiracy; and (4) declaratory judgment. Finally, against the Directors, Falcon asserts claims for (1) tortious interference with contract and (2) civil conspiracy.

---

[3] Falcon's declaratory judgment claim requests a declaration that the BSA is enforceable. We don't discuss that claim separately in light of our conclusion that the BSA is void.

¶ 6    Defendants sought dismissal under the CGIA and summary judgment under several theories.  After an evidentiary hearing pursuant to *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), to determine the court's subject matter jurisdiction under the CGIA, the district court granted defendants' motions.[4]  Ruling that the CGIA bars the promissory estoppel, unjust enrichment, and civil conspiracy claims asserted against the District, the district court dismissed them "against all defendants."[5]  The court then determined that the BSA is void and unenforceable for several reasons, and on that basis it entered summary judgment in all defendants' favor.  But the court denied the District's and the Directors' requests for attorney fees.

## II.    Falcon's Appeal

¶ 7    Falcon contends that the district court erred in its application of the CGIA, and in granting summary judgment.  We conclude that

---

[4] Under *Trinity*, a district court, rather than a jury, determines issues relating to a governmental immunity claim, "including factual issues, regardless of whether those issues are jurisdictional in nature." *Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 5.
[5] The district court specifically addressed the civil conspiracy claim, saying that since the conspiracy claim against the District is barred, "there cannot be a conspiracy at all."

the court erred in applying the CGIA, in part.[6]  But we agree with the district court that the BSA is void.  And since the majority of Falcon's claims are premised on the BSA's validity, summary judgment is appropriate for all but one of Falcon's claims.  That one claim is Falcon's claim for unjust enrichment against Oakwood.

## A.  Governmental Immunity

¶ 8    Because of its jurisdictional implications, we first address whether the CGIA bars any of Falcon's claims against the District, Oakwood, or the Directors.

¶ 9    Falcon argues that the district court erred by dismissing its promissory estoppel and unjust enrichment claims against the District based on governmental immunity because those claims are contract claims, not tort claims.  It also argues that the district court erred by dismissing its claims against Oakwood based on governmental immunity, in part for the same reason but also because the Oakwood entities are private, not public.  The Directors argue that the court should've dismissed both of Falcon's claims

---

[6] Because "we can resolve it ourselves as a matter of law," we needn't remand on this issue.  *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002), *aff'd on other grounds*, 90 P.3d 859 (Colo. 2004).

against them — for tortious interference and civil conspiracy — under the CGIA because the Directors are public employees within the meaning of the CGIA.[7]  We agree with all three arguments.

¶ 10    The CGIA provides that "public entit[ies] shall be immune from liability in all claims for injury which lie in tort or could lie in tort" unless immunity has been expressly waived.  § 24-10-106(1), C.R.S. 2017.  It also immunizes public employees from tort claims so long as they acted within the scope of their employment.  § 24-10-118(2)(a), C.R.S. 2017.  A "public employee" is "an officer, employee, servant, or authorized volunteer of the public entity, whether or not compensated, elected, or appointed."  § 24-10-103(4)(a), C.R.S. 2017.  A court lacks jurisdiction to adjudicate tort claims against an entity or employee protected by the CGIA.  *Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000).

¶ 11    Where the facts are undisputed and the issue is one of law, we review a district court's application of the CGIA de novo.  *Ceja v. Lemire*, 154 P.3d 1064, 1065 (Colo. 2007).

---

[7] The Directors raised the immunity issue in a motion and at the *Trinity* hearing.

## 1.   The District

¶ 12    It's undisputed that the District is a public entity within the meaning and protection of the CGIA.  So the district court properly dismissed the civil conspiracy claim against the District because that claim is undeniably a tort claim.  *See Resolution Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1056 (Colo. 1995); *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 148-49 (Colo. App. 2003).

¶ 13    But we agree with Falcon that the court improperly dismissed its unjust enrichment and promissory estoppel claims as sounding in tort.  Governmental immunity doesn't apply to actions "grounded in contracts."  *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258 (Colo. 1996).  "The essential difference between a tort obligation and a contract obligation is the source of the parties' duties."  *Carothers v. Archuleta Cty. Sheriff*, 159 P.3d 647, 655 (Colo. App. 2006).  "Contract obligations arise from promises made between parties," whereas "[t]ort obligations generally arise from duties imposed by law, and tortious conduct is a breach of a duty imposed by law, not by contract."  *Id.* at 655-56.  We apply a "case by case analysis" to

determine whether the claims in this case could sound in tort. *See Berg*, 919 P.2d at 259.

¶ 14 Promissory estoppel "involves a promise by a government agency or official." *Allen Homesite Grp. v. Colo. Water Quality Control Comm'n,* 19 P.3d 32, 35 (Colo. App. 2000). The supreme court has recognized that "promissory estoppel is a distinct contract claim," so the CGIA doesn't bar such a claim when the plaintiff pleads the claim in terms of a promise that the governmental entity failed to fulfill. *Berg*, 919 P.2d at 259.

¶ 15 "Unjust enrichment is a form of quasi-contract or contract implied in law" that "can be predicated on either tort or contract law." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). To determine which is the predicate in a given case, a court must assess "the nature of the injury and the relief requested." *Id.*

¶ 16 In support of its promissory estoppel claim, Falcon alleges that "[t]hrough negotiation of the [BSA] and as reflected in the [BSA], [the] District promised Falcon that it would [perform as agreed in the BSA]" and that Falcon reasonably relied on that promise to its detriment. Similarly, Falcon alleges in support of its unjust enrichment claim that the District unjustly benefited from the BSA.

¶ 17     The District argues that these claims are based on its allegedly fraudulent — that is, tortious — actions.  But neither claim is based on an alleged misrepresentation or duty independent of the BSA; rather, the source of both claims is the BSA.  Indeed, both are essentially asserted in the alternative in the event the BSA is declared invalid.  And the type of relief Falcon seeks is enforcement of contractual promises through the quasi-contractual theory of promissory estoppel and the restitution theory of unjust enrichment.  Thus, these claims sound firmly in contract.  *Cf. Robinson*, 179 P.3d at 1005 (claims brought based on allegations that the Colorado State Lottery Division misrepresented the possibility of winning the lottery were tort claims); *CAMAS Colo., Inc. v. Bd. of Cty. Comm'rs*, 36 P.3d 135, 139 (Colo. App. 2001) (contractor's claim for quantum meruit sounded in contract while claims for fraud, negligent misrepresentation, and interference with future contracts sounded in tort); *Lehman v. City of Louisville*, 857 P.2d 455, 457 (Colo. App. 1992) (equitable estoppel claim sounded in tort because it was based on a misrepresentation).

¶ 18    We therefore conclude that the CGIA doesn't bar either of these claims.  But, as discussed below, the District is entitled to judgment anyway.

## 2.    Oakwood

¶ 19    All the Oakwood entities are private associations; none is a public entity.  The district court therefore erred in dismissing some of Falcon's claims against Oakwood under the CGIA.  § 24-10-103(5) (defining a "[p]ublic entity" for purposes of the CGIA); § 24-10-106(1) ("[a] public entity shall be immune from liability"); *see also Podboy v. Fraternal Order of Police*, 94 P.3d 1226, 1229 (Colo. App. 2004) (employee union wasn't a public entity and therefore wasn't entitled to the protection of the CGIA).[8]

## 3.    The Directors

¶ 20    As noted, Falcon asserts two claims against the Directors — tortious interference and civil conspiracy — both of which are clearly tort claims.  And, as officers of the District, the Directors are

---

[8] Oakwood doesn't defend the district court's judgment on this basis.

10

public employees for purposes of the CGIA.  *See Tallman Gulch Metro. Dist. v. Natureview Dev., LLC*, 2017 COA 69, ¶ 17.

¶ 21     Nonetheless, Falcon argues that it has sued the Directors in their private capacities as agents of Oakwood rather than as directors of the District.[9]  We therefore look at the totality of the circumstances to decide whether the acts in question were "necessarily incidental to [public] employment."  *First Nat'l Bank of Durango v. Lyons*, 2015 COA 19, ¶ 47 (quoting *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 18 P.3d 837, 843 (Colo. App. 2002)).  This determination turns on whether the acts bear a relationship to the business or are customary in the business.  *Id.*

¶ 22     We don't see any evidence in the record to support Falcon's argument that it has sued the Directors in their private capacities. Falcon characterizes the Directors as "individuals who have been elected or appointed to serve or have served on the Board of Directors of the District and who are or have been employees,

---

[9] Alternatively, in its reply brief, Falcon argues for the first time that the Directors' actions were willful and wanton and thus excluded from the protection of the CGIA.  We won't consider arguments raised for the first time on appeal.  *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992).

11

agents or representatives of Oakwood." But in the *Trinity* hearing, Falcon's president, Randy DeYoung, testified that Falcon is suing the Directors because they're on the District's board of directors. And Falcon's amended complaint similarly emphasizes the individuals' positions as board members. Falcon alleges that the District, "acting through its Board of Directors," breached the BSA, and that "Oakwood met with the District, through the [Directors]." According to Falcon, Oakwood told the Directors what to do. But Falcon doesn't allege that the Directors did anything outside the scope of their roles as District directors or otherwise acted as private individuals.

¶ 23    In short, Falcon sued the Directors because they, as District directors, decided to stop honoring the BSA; it didn't allege, much less present any evidence at the *Trinity* hearing indicating, that the Directors, as private individuals, caused the District to stop honoring the BSA.

¶ 24    Because the Directors allegedly acted in their roles as directors of the District, governmental immunity protects them. It follows that the district court should've dismissed the claims against them under C.R.C.P. 12(b)(1). *W.O. Brisben Cos. v. Krystkowiak*, 66 P.3d

12

133, 137 (Colo. App. 2002) (where the plaintiff improperly postured his motion to dismiss as a C.R.C.P. 12(b)(1) motion, the reviewing court analyzed it under the proper standard without remand), *aff'd on other grounds*, 90 P.3d 859 (Colo. 2004); *Norsby v. Jensen*, 916 P.2d 555, 559 (Colo. App. 1995) (district court improperly treated a C.R.C.P. 12(b)(1) motion as a C.R.C.P. 12(b)(5) motion, but reviewing court applied governing rule without remand).

## B. Falcon's Other Contentions

¶ 25 Falcon also contends that the district court erred by determining that the BSA is void and by entering summary judgment on its tortious interference and civil conspiracy claims regardless of the BSA's validity. Both contentions fail.

### 1. Standard of Review

¶ 26 Falcon's arguments present issues of statutory interpretation, contract interpretation, and summary judgment. We review all such issues de novo. *Burton v. Colo. Access*, 2018 CO 11, ¶ 19 (summary judgment and statutory interpretation); *Laleh v. Johnson*, 2017 CO 93, ¶ 18 (contract interpretation). Summary judgment is proper where there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law.
C.R.C.P. 56(c).

### 2. The BSA Is Void and Unenforceable

¶ 27 The district court determined that the BSA violates four different statutes, and that each violation is sufficient to render the BSA void and unenforceable.[10] We needn't address each reason because we agree with the district court that the BSA is void under section 29-1-110, C.R.S. 2017. *See Saunders v. Muratori*, 251 P.3d 550, 556 (Colo. App. 2010) (where appellate court affirmed ruling on one of two alternative grounds, it wasn't necessary to address the other); *Bolser v. Bd. of Comm'rs*, 100 P.3d 51, 54 (Colo. App. 2004) (same).

### a. Additional Background

¶ 28 The fees provision of the BSA says that "Metro District shall pay to [Falcon] the Bulk Services fee as set forth on Exhibit B." The

---

[10] The court ruled that (1) the BSA violates section 29-1-110(1), C.R.S. 2017, because the District's payment of fees could exceed annual appropriations; (2) the directors who negotiated it failed to file conflict disclosures required by section 24-18-201, C.R.S. 2017; (3) it wasn't approved at a District meeting as required by section 24-6-402(8), C.R.S. 2017; and (4) it violates sections 6-2-108 and -109, C.R.S. 2017, as an illegal contract to share money and destroy competition.

14

District then bills the residents for recoupment of the fees. This arrangement is to last "until 2700 homes in the Development [have been] [o]ccupied."

¶ 29 The district court found that "by the plain language of the document," the fee provision requires "payment of fees that could exceed annual appropriations in violation of C.R.S. 29-1-110(1)." Falcon had argued that the statute applies only to the fiscal year in which a contract is formed, but the district court wasn't persuaded, and neither are we.

### b. Section 29-1-110

¶ 30 "[L]ong term agreements involving expenditures of municipal funds are looked upon with disfavor . . . ." 10A Eugene McQuillin, *The Law of Municipal Corporations* § 29:101, at 58 (3d ed., rev. vol. 2009). Colorado has codified that sentiment in section 29-1-110 by limiting a governmental entity's power to contract without a prior appropriation of funds. It reads as follows:

> (1) During the fiscal year, no officer, employee, or other spending agency shall expend or contract to expend any money, or incur any liability, or enter into any contract which, by its terms, involves the expenditures of money in excess of the amounts appropriated. Any contract, verbal or written, made in violation of

this section shall be void, and no moneys belonging to a local government shall be paid on such contract.

(2) Multiple-year contracts may be entered into where allowed by law or if subject to annual appropriation.

§ 29-1-110.

¶ 31     Our aim in construing a statute is to give effect to the General Assembly's intent. *Hernandez v. Ray Domenico Farms, Inc.*, 2018 CO 15, ¶ 6. Our first step is to determine whether the statute has a plain and unambiguous meaning. *Id.* To do this, we look at the language of the statute (applying the plain and ordinary meanings of the words), the context in which the language is used, and the context of the statute as a whole. *See Burton*, ¶ 23; *see also Hernandez*, ¶ 6 ("[W]e must consider the statute in its entirety, giving 'harmonious and sensible effect to all its parts.'" (quoting *Leonard v. McMorris*, 63 P.3d 323, 326 (Colo. 2003))). A "cardinal principle of statutory construction" is that no clause, sentence, or word is "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted).

¶ 32     If, after doing this, we determine that the statute is unambiguous, we apply it as written. But if we determine that the

statute is ambiguous, we lean on other rules of statutory construction to discern the General Assembly's intent. *People in Interest of O.C.*, 2013 CO 56, ¶¶ 13, 15.

¶ 33     With these rules of statutory construction in mind, we turn to the meaning of section 29-1-110 and Falcon's argument that section 29-1-110 doesn't apply to the BSA because it only requires an appropriation for the fiscal year in which the contract was executed.

¶ 34     It isn't completely clear whether the phrase "[d]uring the fiscal year" in subsection (1) limits the section's application to the year in which a contract was entered into, as Falcon argues, or whether it imposes a prohibition that applies to every year of a contract's existence, as defendants argue. We think the correct reading of the statute conditions contractual validity on prior appropriation of funds for the year in which the contract was entered into *and* any subsequent years. The broader context of the statute as well as its history supports this interpretation.

¶ 35     First, Falcon overlooks subsection (2) of section 29-1-110, which says that "[m]ultiple-year contracts may be entered into where allowed by law or if subject to annual appropriation." The

statute therefore expressly says when multi-year contracts are allowed. This provision would be meaningless if the appropriation requirement only applied to the fiscal year the contract was entered into. And we won't read a statute to render any part meaningless. *Johnson v. Sch. Dist. No. 1*, 2018 CO 17, ¶ 17; *Krol v. CF & I Steel*, 2013 COA 32, ¶ 18.

¶ 36 Second, the statute is part of the "Local Government Budget Law of Colorado." § 29-1-101, C.R.S. 2017. The purposes of these statutes collectively are "to protect the taxpayer against improvident use of tax revenue, to encourage citizen participation and debate prior to the institution of public projects, to insure public disclosure of proposed spending, and to encourage prudence and thrift by those elected to direct expenditure of public funds." *Shannon Water & Sanitation Dist. v. Norris & Sons Drilling Co.*, 29 Colo. App. 48, 52, 477 P.2d 476, 478 (1970). These purposes are served by requiring advance appropriations for the entire term of a contract.

¶ 37 Third, previous versions of this statute evidence the General Assembly's continual unease over allowing contracts that bind governmental entities without prior appropriations. The original version of the statute said:

18

> When contracts and expenditures are prohibited. No officer, department, board, commission, or other spending agency shall, during the fiscal year, expend or contract to be expended any money, or incur any liability, or enter into any contract which, by its terms, involves the expenditure of money for any of the purposes for which provision is made in the appropriation ordinance in excess of the amounts appropriated in said ordinance, for such officer, department, board, commission, or other expending agency, or purpose, for such fiscal year. Any contract, verbal or written, made in violation of this Section shall be null and void as to the local government, and no moneys belonging thereto shall be paid thereon; Provided, however, that nothing herein contained shall prevent the making of contracts for governmental services or for capital outlay in school districts of the first class for a period exceeding one year, *but any contract so made shall be executory only for the amounts agreed to be paid for such services to be rendered in succeeding fiscal years.*

Ch. 125, sec. 10, 1933 Colo. Sess. Laws 671-72 (emphasis added); C.S.A. 1935, Ch. 103, § 13.

¶ 38     The word "executory" indicates that no contract would be enforceable absent the satisfaction of a condition precedent — specifically, an appropriation. *See Mitchell Bank v. Schanke,* 676 N.W.2d 849, 857 (Wis. 2004) (an executory contract is conditioned on a future activity); *Gaugert v. Duve,* 579 N.W.2d 746, 748 (Wis.

Ct. App. 1998) ("At law, when a contract is missing one of the essential elements which would make it binding, it is known as an 'executory' contract and a party is under no obligation to perform."); Black's Law Dictionary 393 (10th ed. 2014) (an executory contract is "[a] contract that remains wholly unperformed or for which there remains something still to be done on both sides, often as a component of a larger transaction and sometimes memorialized by an informal letter agreement, by a memorandum, or by oral agreement").

¶ 39    Thus, the first iteration of the statute rendered all multi-year contracts unenforceable subject to the satisfaction of the appropriation condition precedent.  Subsequent versions of the statute followed in these footsteps, but the current version goes further: multi-year contracts aren't merely executory if money hasn't been appropriated — they're void.  § 29-1-110(1), (2).[11]

¶ 40    The BSA creates an economic commitment the District wasn't at liberty to make because it requires the District to pay Falcon

---

[11] Subsection (2) of the statute also allows multi-year contracts if otherwise allowed by law.  Falcon doesn't argue that any other provision of law allows multi-year contracts like the BSA.

regardless of appropriations.[12]  Even though the BSA didn't require the District to pay anything during the fiscal year in which it was signed, it did require expenditures without appropriation in the following fiscal years in violation of section 29-1-110.  The BSA is therefore void.  *See Town of Alma v. AZCO Constr., Inc.*, 985 P.2d 56, 58 (Colo. App. 1999) ("Section 29-1-110(1), C.R.S. [2017], prohibits municipalities from spending any funds in excess of amounts appropriated in the adopted budget, and renders any contract entered in violation of this section void."), *aff'd*, 10 P.3d 1256 (Colo. 2000).

### c. Falcon Isn't Entitled to Equitable Relief

¶ 41    Falcon next contends that it's entitled to equitable relief even if the BSA is void.  But a party contracting with a governmental entity has the duty to "ascertain whether the contract complies with the constitution, statutes, charters, and ordinances so far as they are

_____

[12] Falcon argues that even if the statute applies, the District couldn't have exceeded appropriations absent fraud because the amount paid to Falcon is recouped from the residents.  But the BSA requires the District to expend funds before recouping from residents and doesn't account for potential nonpayment by the residents.  That is, it doesn't condition payment to Falcon on the District's ability to recoup.

21

applicable." 10 McQuillin, § 29:10, at 351. And so the party contracting with a governmental entity bears the risk that "all recovery, including *quantum meruit*, [will be] denied" if the contract isn't valid. *Normandy Estates Metro. Recreation Dist. v. Normandy Estates, Ltd.*, 191 Colo. 292, 295, 553 P.2d 386, 388-89 (1976); *see also* 10A McQuillin, § 29:91, at 8-9 (a municipal corporation isn't "required to restore status quo or to compensate for benefits received under [a void] agreement"). This rule can produce "harsh results," but it protects the taxpayers against improper expenditures. *Shannon Water & Sanitation Dist.*, 29 Colo. App. at 52, 477 P.2d at 478.

¶ 42 There is, however, a limited exception. "[W]here property is furnished to a municipal corporation under an unenforceable contract, and the municipality has not paid for the property, then the seller or person supplying the property may, upon equitable terms, recover it *in specie*." *Normandy Estates*, 191 Colo. at 296, 553 P.2d at 389.

¶ 43 In *Normandy Estates*, a contract to transfer property and recreational facilities on that property was void for failure to comply with a statutorily required vote. *Id.* Nonetheless, the supreme

court allowed the corporation to recover either the remaining balance or specific property transferred. *Id.* at 297, 553 P.2d at 390.

¶ 44　But this exception is extremely limited. *Id.* The only equitable recovery theoretically available to Falcon would be the recovery of any property it transferred to the District. *Id.* And *Normandy Estates* makes clear that "there can be no recovery where the property is no longer in existence or identifiable." *Id.* Addressing this exception, a division of this court held in another case that a contractor wasn't entitled to recover upon equitable terms where property couldn't be restored without "serious damage to the property of the municipality." *F. J. Kent Corp. v. Town of Dillon*, 648 P.2d 669, 670 (Colo. App. 1982).

¶ 45　The BSA was a contract for services; the only tangible property transferred was the infrastructure and wiring required to provide the services. Falcon asked for recovery for its provision of services, not for its provision of infrastructure. And, even if it had asked, the infrastructure couldn't be returned without serious damage to the District's property. It follows that Falcon isn't entitled to equitable relief under *Normandy Estates*.

### 3. Because the BSA Is Void, All of Falcon's Claims, Save One, Fail

¶ 46    Because all of Falcon's claims are premised on the BSA's validity, only its unjust enrichment claim against Oakwood survives.

### a. Contract-type Claims

¶ 47    Initially, we affirm the district court's judgment on the breach of contract and breach of the implied covenant of good faith and fair dealing claims because both claims require a valid contract. *See City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (covenant of good faith and fair dealing is implied in every contract and requires good faith in the discretionary performance of contractual obligations); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (the existence of a contract is an element of a breach of contract claim); *see also Schmidt v. Wells Fargo & Co.*, ___ F. Supp. 3d ___, ___, 2018 WL 1522609, * 5 & n.2 (D. Colo. Mar. 28, 2018) (a void contract can't support a claim for breach of the implied covenant of good faith and fair dealing; applying Colorado law); Restatement (Second) of Contracts § 7 cmt. a (Am. Law Inst. 1981) (there is no remedy for breach, nor is there any duty of performance

24

under a void contract because it "is not a contract at all"). Falcon doesn't argue otherwise.

¶ 48    Next, where a contract with a governmental entity is void for the reason discussed above, there is no option for recovery under any theory, save the limited exception not applicable in this case. *Normandy Estates*, 191 Colo. at 295, 553 P.2d at 388-89; *Rocky Mountain Nat. Gas, LLC v. Colo. Mountain Junior Coll. Dist.*, 2014 COA 118, ¶ 31 ("[W]here a contract is void because it is not within a municipality's power to make, the municipality cannot be estopped to deny the validity of the contract."). And so neither the BSA itself nor the District's actions in connection therewith can support a cause of action for either promissory estoppel or unjust enrichment against the District. *See* 10A McQuillin, § 29:117, at 160-62 ("The fiction of an implied promise or agreement, or the theory of a liability based on quantum meruit cannot be substituted for an express contract which is void for noncompliance with mandatory terms of the statutes or charter.").[13]

---

[13] The district court dismissed this claim as barred by section 24-10-103, C.R.S. 2017, of the CGIA. As discussed above, the court shouldn't have dismissed this claim as to the District under the

25

¶ 49 Falcon also asserts the unjust enrichment claim against Oakwood, however, alleging that Oakwood benefited from the provision of the services Falcon provided.[14] The only reason the district court gave for dismissing this claim against Oakwood was that it's barred by governmental immunity. But because the Oakwood entities are private entities, not public ones, governmental immunity doesn't apply to this claim.

¶ 50 We note that whether a party is entitled to an equitable remedy for unjust enrichment is a discretionary call for the district court, and that in making that call the court may need to make extensive factual findings. *Lewis v. Lewis*, 189 P.3d 1134, 1140 (Colo. 2008). Oakwood doesn't argue on appeal that there's an alternative legal basis for entering judgment in its favor on this claim, and so we think the wisest course is to reverse the judgment and remand for further proceedings.

---

CGIA, but rather should've done so on summary judgment under section 29-1-110. Likewise, Oakwood isn't entitled to dismissal of this claim on governmental immunity grounds.

[14] Oakwood argues that Falcon waived this issue because it didn't appeal the judgment on this claim. But Falcon did appeal as to this claim; it argues in its opening brief that the Oakwood entities are private and therefore not entitled to CGIA protection — the only basis for the judgment given by the district court on this claim.

26

### b.     Tort Claims

¶ 51     Falcon contends that even if the BSA is void, its tortious interference and civil conspiracy claims remain viable.  We disagree. Because, as explained above, the CGIA protects the Directors from both of these claims and protects the District from the civil conspiracy claim (Falcon doesn't assert the tortious interference claim against the District, presumably because a party can't tortiously interfere with its own contract), we need only address these claims further as they pertain to Oakwood.

#### i.     Tortious Interference

¶ 52     In arguing that its tortious interference claim remains viable because that claim doesn't depend on the BSA's validity, Falcon ignores its own factual allegations and misapprehends the applicable law.

¶ 53     As pleaded in the amended complaint, Falcon's claim for tortious interference expressly relies on the validity of the BSA. Falcon alleges that

- "[t]he [BSA] is a valid contract between the District and Falcon";

- Oakwood and its officers, employees, and "interested parties" on the District's board knew about the BSA; and

- Oakwood told the Directors to cease the District's performance under the BSA.

It is therefore clear that Falcon's claim is premised on the BSA alone, and not some prospective business arrangement.

¶ 54    The law, also, isn't on Falcon's side. "One who intentionally and improperly interferes in the performance of a contract between another and a third person is liable in tort to the other for the pecuniary loss resulting from the nonperformance of the contract." *W.O. Brisben Cos.*, 66 P.3d at 136 (citing *Trimble v. City & Cty. of Denver*, 697 P.2d 716, 726 (Colo. 1985)). "[A]n essential element of this tort is the existence of a contract between the plaintiff and a third party." *Grimm Constr. Co. v. Denver Bd. of Water Comm'rs*, 835 P.2d 599, 601 (Colo. App. 1992); *see also Condo v. Conners*, 271 P.3d 524, 526 (Colo. App. 2010) ("For a claim for tortious interference with a contract to be viable, a valid contract must exist."), *aff'd*, 266 P.3d 1110 (Colo. 2011). So "if for any reason [a contract] is entirely void, there is no liability for causing its breach."

Restatement (Second) of Torts § 766 cmt. f (Am. Law Inst. 1979); *accord* Restatement (Second) of Torts § 774 & cmts. a, b; *see also* *Condo*, 271 P.3d at 530 (because the contract at issue was void, the tortious interference claim necessarily failed).[15]  This is so because a void contract is no contract at all.  Restatement (Second) of Torts § 774 cmt. b; *see also* Restatement (Second) of Contracts § 7 cmt. a.

It follows that Falcon's claim for tortious interference against Oakwood (and the Directors, were the CGIA not applicable) fails as a matter of law.[16]

### ii.    Civil Conspiracy

¶ 55      "[T]he elements for a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action." *Double Oak Constr.,* 97 P.3d at 146.  Given our conclusions that the BSA is void and that there was no tortious interference, no unlawful overt act arguably supports Falcon's civil conspiracy claim.  So that claim also fails.  *Condo,* 271 P.3d at 530.

---

[15] The rule is different as to contracts that are merely voidable.  *See* Restatement (Second) of Torts § 766 cmt. f (Am. Law Inst. 1979). But the BSA is void, not merely voidable.

[16] None of the cases on which Falcon relies in this context pertain to void contracts.

¶ 56    The District and the Directors cross-appeal, arguing that the court erred by failing to award them attorney fees under section 13-17-201.[17]  We agree only with the Directors.

## A.   Standard of Review

¶ 57    We review de novo questions of law, including whether a statute requires an award of attorney fees.  *Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo. 2010).

## B.   Applicable Law

¶ 58    Section 13-17-201 provides in relevant part as follows:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

¶ 59    The statute unambiguously requires an award of attorney fees where an action is dismissed under C.R.C.P. 12(b).  *See Crandall*,

---

[17] The Oakwood entities don't ask for attorney fees, presumably because they are private entities not entitled to the protection of the CGIA.  Section 13-17-201, C.R.S. 2017, allows an award of attorney fees only in an action dismissed under C.R.C.P. 12(b).  As discussed, the claims against Oakwood, except the unjust enrichment claim, should've been resolved under C.R.C.P. 56.

238 P.3d at 663 (statute "unequivocally mandate[s]" attorney fees); *Gagne v. Gagne*, 2014 COA 127, ¶ 74 (same). But sometimes applying it isn't as simple as looking to whether the defendant prevailed on a motion filed under that rule. For instance, by its own terms, the statute doesn't apply to a Rule 12(b) motion that is "treated as a motion for summary judgment." § 13-17-201. Nor does it apply if the court doesn't dismiss all the tort claims against a certain defendant or "if an action contains both tort and non-tort claims and the defendant obtains C.R.C.P 12(b) dismissal of only the tort claims." *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 607 (Colo. App. 2008); *see also Barton v. Law Offices of John W. McKendree*, 126 P.3d 313, 314 (Colo. App. 2005) (no recovery where one of the tort claims was dismissed for failure to file a certificate of review); *First Interstate Bank of Denver, N.A. v. Berenbaum*, 872 P.2d 1297, 1302 (Colo. App. 1993) (no recovery where one of the tort claims was disposed of on summary judgment). In other words, for the statute to apply, the court must've dismissed the entire action pursuant to a Rule 12(b) motion, and that action must be a tort action.

31

¶ 60   For purposes of this statute, how the plaintiff chose to plead the claim (as a tort or not) controls. *Robinson*, 179 P.3d at 1010; *Castro v. Lintz*, 2014 COA 91, ¶ 16. And, when a plaintiff brings both tort and non-tort claims against a particular defendant, an award of attorney fees is required only if "the essence of the action was one in tort." *Castro*, ¶ 16.

## C.   Analysis

¶ 61   To recap, of the various claims Falcon asserts against the District, we've concluded that (1) the district court properly granted the District summary judgment on the breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment claims; (2) the district court should've granted summary judgment to the District on the promissory estoppel and unjust enrichment claims rather than dismissing them under the CGIA; and (3) the district court properly dismissed the civil conspiracy claim under the CGIA. As for the claims Falcon asserts against the Directors (for tortious interference and civil conspiracy), the district court should've dismissed them under C.R.C.P. 12(b)(1) as barred by the CGIA.

¶ 62    Because the statute applies to the claims against each defendant individually, *Colo. Special Dists. Prop. & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 60, we address the District's and the Directors' requests for fees separately.

### 1.    The District

¶ 63    Of the six claims Falcon brought against the District, only one is a tort claim that was properly dismissed under C.R.C.P. 12(b)(1) as barred by the CGIA.[18]  The rest are contract-type claims that the court resolved on summary judgment or should've resolved on summary judgment.  And the gist of Falcon's action against the District was the District's failure to perform the BSA, not its commission of any tort.  And so the District isn't entitled to fees. *Compare Castro*, ¶¶ 29-33 (dismissal didn't entitle a party to attorney fees because the essence of the action wasn't tort), *with Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 997

---

[18] The District's arguments to the contrary notwithstanding, the promissory estoppel and unjust enrichment claims are even more clearly contract-type claims in this context than they are for CGIA purposes. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008) ("[W]e will not read the CGIA's concern for claims that 'lie or could lie in tort' into the plain language of section 13-17-201.").

(Colo. App. 2011) (the defendant was entitled to attorney fees because tort claims sought relief beyond that available under a breach of contract theory, and there were an equal number of tort and non-tort claims).

## 2.  The Directors

¶ 64     But with respect to Falcon's action against the Directors, it's a different story.  The only claims Falcon brought against the Directors were tort claims.  The district court should've dismissed both claims under C.R.C.P 12(b)(1) because the Directors, as public employees, are entitled to the protection of the CGIA.

¶ 65     Because Falcon's entire action against the Directors should've been dismissed under C.R.C.P. 12(b)(1) as tort claims barred by the CGIA, the Directors are entitled to an award of their reasonable attorney fees under section 13-17-201.

## IV.  Attorney Fees on Appeal

¶ 66     The Directors are also entitled to an award of their reasonable attorney fees incurred in their successful appeal under section 13-17-201.  *State Farm Fire & Cas. Co. v. Weiss,* 194 P.3d 1063, 1065 (Colo. App. 2008).  We direct the district court to determine those fees.  *See* C.A.R. 39.1.

34

## V.    Conclusion

¶ 67    We affirm the judgment on all claims except as to Falcon's unjust enrichment claim against the Oakwood entities.  We reverse the judgment as to that claim.  We affirm the district court's denial of the District's request for attorney fees.  And lastly, we reverse the district court's denial of the Directors' request for attorney fees and remand that issue for a determination of the Directors' reasonable attorney fees incurred in the district court and on appeal.

JUDGE ASHBY and JUDGE HARRIS concur.